WILLIAM McCLAUGHRY *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF ANTIOCH *et al.*, Defendants-Appellees.—WILLIAM McCLAUGHRY *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF ANTIOCH *et al.*, Defendants-Appellants (METRA *et al.*, Defendants).

Second District Nos. 2—97—0397, 2—97—0572 cons.

Opinion filed January 27, 1998.

David G. Duggan, of Law Offices of David G. Duggan, of Chicago, and C. Jeffrey Thut, of Roach, Johnston & Thut, of Libertyville, for William McClaughry *et al.*

Kenneth M. Clark, of Kenneth M. Clark & Associates, P.C., of Antioch, for Village of Antioch and Marilyn Shineflug.

Sue-Ann Rosen, Michael C. Noland, and Joann C. Pelka, all of Northeast Illinois Regional Commuter Railroad Corporation, and Stephen C. Carlson and James B. Speta, both of Sidley & Austin, both of Chicago, for appellee METRA.

James A. Fletcher and James D. Helenhouse, both of Oppenheimer, Wolff & Donnelly, of Chicago, for appellee Wisconsin Central Railroad, Ltd.

JUSTICE RATHJE delivered the opinion of the court:

The plaintiffs, William McClaughry, Faye McClaughry, Cecile Kelly, Brenda Lytner, Jeffrey Brock, Frank Weissmuller, and James G. Duggan, brought suit against the defendants, the Village of Antioch, Marilyn Shineflug, in her capacity as mayor of Antioch (collectively the Village), METRA, and Wisconsin Central Ltd. (collectively the railroads). Count I of the suit sought a writ of *mandamus* ordering the Village to enforce Antioch's nuisance ordinance against the railroads. Count II of the suit sought to enjoin the railroads from sounding their train horns on the basis that the noise created thereby constituted a nuisance.

All the defendants filed motions to dismiss. The trial court found that the Illinois Commerce Commission (Commission) had exclusive jurisdiction over the issue of railroad safety and granted the defendants' motions to dismiss. The trial court did not reach the issue of whether the complaint stated a cause of action.

Thereafter, the Village filed a petition for attorney fees pursuant to Supreme Court Rule 137. 155 Ill. 2d R. 137. Following a hearing, the trial court denied the fee petition.

On appeal the plaintiffs raise the following issues: whether the trial court erred in ruling that it lacked jurisdiction to enjoin the railroads' horn sounding as a nuisance; and whether the trial court erred in not issuing a writ of *mandamus* ordering the Village to enforce its nuisance ordinance against the railroads. The Village filed a separate appeal from the trial court's order denying the request for attorney fees. The two appeals have been consolidated for our review.

■ Section 18c—7101 of the Illinois Commercial Transportation Law (Commercial Act) provides as follows:

> "Jurisdiction Over Rail Carriers. The jurisdiction of the Commission under this Sub-chapter shall be exclusive and shall extend to all intrastate and interstate rail carrier operations within this State, except to the extent that its jurisdiction is preempted by valid provisions of the Staggers Rail Act of 1980 or other valid

federal statute, regulation, or order." 625 ILCS 5/18c—7101 (West 1994).

Section 18c—7402 of the Commercial Act sets forth the safety requirements for railroad operations and provides in pertinent part as follows:

> "Bell and Whistle-Crossings. Every rail carrier shall cause a bell, and a whistle or horn to be placed and kept on each locomotive, and shall cause the same to be rung or sounded by the engineer or fireman, at the distance of a [sic] least 1,320 feet, from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or sounding until the highway is reached; provided that at crossings where the Commission shall by order direct, only after a hearing has been held to determine the public is reasonably and sufficiently protected, the rail carrier may be excused from giving warning provided by this paragraph." 625 ILCS 5/18c—7402(2)(a) (West 1994).

Prior to the commencement of the lawsuit in this case, the Commission held hearings at which the rail carriers presented their positions as to whether they wished to be excused from whistle sounding as required by section 18c—7402(2)(a). Several rail carriers indicated that they would continue to sound their whistles even if excused from doing so by the Commission. The representatives from several municipalities also presented their views on the whistle sounding. The City of Chicago voiced no objections to whistle sounding at Chicago crossings. However, several municipalities such as La Grange, Riverside, Westmont, Elmwood Park, Mount Prospect, and Elmhurst requested that the rail carriers be excused from sounding their whistles within their communities and presented evidence in support of their position. In addition, letters were received from other municipalities stating their positions.

Based upon the record from the hearings, the Commission entered an order which provided in pertinent part as follows:

> "(8) Illinois Compiled Statute 625 ILCS 5/18c—7402 authorizes the Commission to *excuse* registered rail carriers from sounding whistle warning(s) after hearing(s); such statute does not give the Commission any authority to *prohibit the sounding of* such whistle warning(s); the Commission has established a standard under which it excuses railroads from sounding whistle warning(s); however, if governmental authorities (communities) desire that a registered rail carrier sound whistle warning[s] at crossings within its jurisdiction, it may contact the affected rail carrier and such carrier can continue to sound whistles even if excused from whistling by this Commission ***." (Emphasis added.)

By virtue of the Commission order, the railroads in this case

were excused from sounding their whistles/horns at five out of the six crossings located within the Village limits.

The plaintiffs in this case are residents and/or owners of property located in close proximity to Wisconsin Central's right-of-way in Antioch. The allegations of their complaint may be summarized as follows. There are six grade crossings within the municipal limits of Antioch. Approximately 20 trains per day travel through the Village, 10 of which are between 8 p.m. and 6 a.m. Despite the fact that for five out of the six of these crossings the Commission has determined that it is not necessary to sound their horns, Wisconsin Central has directed its locomotives to sound their horns commencing at one-quarter mile in advance of each crossing. The sounds of the horns reach a level of 85 to 95 decibels as measured near the plaintiffs' residences.

According to the plaintiffs, the noise caused by the locomotive horn sounding has caused them a variety of physical disorders, disruption of their social lives and entertainment enjoyment, and loss in property values. Finally, the plaintiffs conclude that the horn-sounding activity constitutes a nuisance under the Village's nuisance ordinance; however, the Village refuses to enforce the ordinance against Wisconsin Central and METRA, whose trains utilize the Wisconsin Central right-of-way. Therefore, the plaintiffs sought enforcement by writ of *mandamus* of the Village's nuisance ordinance and an injunction against the railroads to enjoin them from the non-emergency sounding of their locomotive horns.

The plaintiffs contend, first, that the Illinois legislature did not delegate to the Commission exclusive jurisdiction over all railway safety issues. In support of that contention, the plaintiffs point out that the judiciary has the power to determine whether the Commission has exceeded its jurisdiction, that the legislature has conferred jurisdiction over grade crossing safety on the courts and the municipalities, and that the circuit courts have jurisdiction to hear safety-related negligence actions against rail carriers.

■ It is well settled that the Commission's jurisdiction over all phases of grade crossing regulation is plenary and exclusive. *City of Chicago v. Illinois Commerce Comm'n*, 79 Ill. 2d 213, 219 (1980). In the exercise of its power to regulate grade crossings in the interest of public safety, the Commission is vested with wide discretion to determine what the public interests require and what measures are necessary for the protection and promotion of those interests. *City of Chicago*, 79 Ill. 2d at 219-20.

The plaintiffs fail to explain why the fact that the Commission's decisions are subject to judicial review somehow deprives the Com-

mission of its exclusive jurisdiction over the determination of matters of railroad safety. See 625 ILCS 5/18c—2201 (West 1994). Moreover, section 18c—7403(1) specifically exempts the enforcement actions as to grade crossing obstructions from the Commission's exclusive jurisdiction. 625 ILCS 5/18c—7403(1) (West 1994).

Finally, the fact that common-law negligence actions involving railroad safety are heard by the circuit courts does not divest the Commission of its exclusive decision-making authority in making railroad safety determinations in the first place. In such cases, once the Commission has investigated a crossing and has approved the installation of safety devices, the installation of such devices shall be deemed adequate and appropriate, and a conclusive legal presumption is created which overcomes an argument that other warning devices should have been installed. See *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 121 (1995). The existence of such a presumption, which is based upon the Commission's determination of a rail carrier safety issue, supports the concept that the Commission has the exclusive determination over rail carrier safety issues.

Next, the plaintiffs contend that the plain language of section 18c—7101 does not oust the circuit courts from their jurisdiction over nuisance actions. The plaintiffs attempt to read the Commission's exclusive jurisdiction as covering only "rail carrier operations." In their brief, the plaintiffs argue that "rail carrier operations" means simply "those 'operations' that affect a railroad as a 'carrier.' It does not mean 'horn-blowing' at grade-crossings."

However, the plaintiffs ignore the language of section 18c—7402, which specifically provides that, as part of its operational requirements, a locomotive must be equipped with a bell and a whistle or horn which must be sounded unless otherwise excused. 625 ILCS 5/18c—7402(2)(a) (West 1994).

The plaintiffs liken their situation to that of a party injured as a result of the violation of a safety standard. In their case, the plaintiffs claim they were injured as a result of the railroads' sounding of train horns. They argue that the courts, not the Commission, have the authority to assess damages in the cases involving safety violations.

At the outset, we observe that, by continuing to sound their horns, the railroads in this case have not violated any safety rule promulgated by the Commission. The Commission's order in this case provided that the trains were "excused," not prohibited, from sounding their horns. In issuing its order, the Commission followed the requirements of section 18c—7402(2)(a), which does not provide for a prohibition of horn sounding by the rail carriers, only for the excusal of such activity. 625 ILCS 18c—7402(2)(a) (West 1994). It is also

worth noting that the Commission's order in this case provided that a community could contact the rail carrier to continue the whistle sounding, but not to discontinue the whistle sounding.

Thus, plaintiffs are not in the position of a party who has been injured by the violation of a safety rule.

We next address the plaintiffs' argument that the Commercial Act provides no mechanism for the plaintiffs to demand the enforcement of the Commission's order. However, as even the plaintiffs acknowledge, the Commercial Act does provide a procedure for judicial review of a Commission order. See 625 ILCS 5/18c—2201(1) (West 1994).

The plaintiffs' difficulty here is not the lack of a procedure to secure enforcement of a Commission order but that the remedy they seek is not the enforcement of a Commission order. Under section 18c—7402(2)(a) of the Commercial Act, the legislature has set forth that whistle/horn sounding is mandatory unless excused by the Commission. Nothing in section 18c—7402 grants the Commission the authority to prohibit whistle/horn sounding. Thus, the remedy the plaintiffs seek, that the Commission prohibit the railroads' whistle/horn sounding, is not available because the legislature has determined that whistle/horn sounding is necessary for the public safety.

Next, the plaintiffs contend that, in any event, the Commission does not exercise jurisdiction over METRA. Therefore, even if the trial court's jurisdictional ruling is correct as to Wisconsin Central, it does not apply to METRA. The plaintiffs acknowledge that METRA is controlled by the Metropolitan Transit Authority Act (70 ILCS 3605/1 et seq. (West 1994)) and the Regional Transportation Authority Act (Regional Act) (70 ILCS 3615/1.01 et seq. (West 1994)). Section 2.11 of the Regional Act provides:

> "The provisions of general or special orders, rules or regulations issued by the Illinois Commerce Commission pursuant to Section 57 of 'An Act concerning public utilities', approved June 29, 1921, as amended, which pertain to public transportation and public transportation facilities of railroads will continue to apply until the Service Board determines that different standards are necessary to protect such health and safety." 70 ILCS 3615/2.11 (West 1994).

METRA asserts, and the plaintiffs do not dispute, that METRA has not issued any safety regulations.

The plaintiffs argue that since neither statute governing METRA adopted section 18c—7101 et seq. of the Commercial Act, the exclusive jurisdiction provision contained in section 18c—7101 does not apply to METRA. Moreover, they point out that section 2.11 of the Regional

642

Act refers to a section of the Public Utilities Act (220 ILCS 5/8—505 (West 1994)), not the Commercial Act. Section 8—505 grants the Commission the power to issue orders governing the safety of plants, equipment, or other property of a public utility. Actually, section 2.11 of the Regional Act specifically refers to "[s]ection 57 of 'An Act concerning public utilities.'" 70 ILCS 3615/2.11 (West 1994). In *Espinoza*, our supreme court noted that the Public Utilities Act was the precursor of the Commercial Act. *Espinoza*, 165 Ill. 2d at 122; see also *Village of Dolton ex rel. Winter v. CSX Transportation, Inc.*, 196 Ill. App. 3d 564, 567-68 (1990) (the Commission's regulation of railroad operations under the Public Utilities Act continued under the Commercial Act). Finally, section 18c—7101 of the Commercial Act provides that the exclusive jurisdiction of the Commission extends to all intrastate and interstate rail carrier operations within the state, except as preempted by federal law.

We conclude that the Commission has exclusive jurisdiction over the area of rail carrier safety and, therefore, that the trial court correctly dismissed the plaintiffs' suit for lack of jurisdiction. While plaintiffs maintain that this result leaves them without a remedy in violation of article I, section 12, of the Illinois Constitution of 1970, which provides that every person shall find a remedy for all injuries and wrongs received (Ill. Const. 1970, art. I, § 12), the power and adequacy of the available remedy rest with the legislature. *Goldstein v. Hertz Corp.*, 16 Ill. App. 3d 89, 99 (1973).

In light of our finding that the Commission has exclusive jurisdiction over matters of railroad safety, we need not address the issue of federal preemption.

We now address the issue of the denial of the plaintiffs' request for a writ of *mandamus* to require the Village to enforce its nuisance ordinance against the railroads' whistle/horn sounding.

The plaintiffs contend that, regardless of the language of section 18c—7101 of the Commercial Act, municipalities have the right to regulate noise within their borders. See 65 ILCS 5/11—5—2 (West 1994) ("The corporate authorities of each municipality may prevent or suppress *** noises *** in any public or private place").

The plaintiffs note that section 23 of the Environmental Protection Act (415 ILCS 5/23 (West 1994)) acknowledges the dangers from excessive noise and permits the Pollution Control Board (Board) to adopt regulations prescribing limitations on noise emissions (415 ILCS 5/25 (West 1994)). The plaintiffs reason that, because the Board's comprehensive regulations do not regulate noise emitted from railroad rights-of-way, the Board must have intended that the municipalities have the authority to regulate the nuisance of railroad horn sounding.

Finally, the plaintiffs point out that the Village did not appear at the hearings conducted by the Commission nor did it request that the railroads continue to sound their horns. Thus, goes the plaintiffs' argument, the Village has not complied with the administrative prerequisites and cannot argue that the Commission has preempted the area of horn sounding.

*Mandamus* is not a writ of right but is awarded only in the exercise of sound judicial discretion in accord with legal principles. *Beer Barn, Inc. v. Dillard*, 227 Ill. App. 3d 68, 69 (1992). " 'A writ of *mandamus* is a remedy at law to command a public official to perform some ministerial, *nondiscretionary* duty in which the party seeking such relief has established a *clear right* to have it performed and a corresponding duty on the part of the official to act.' (Emphasis added.)" *Beer Barn, Inc.*, 227 Ill. App. 3d at 69-70, quoting *People ex rel. Ryan v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 136 Ill. App. 3d 818, 820 (1985).

Relying on *Dolton*, 196 Ill. App. 3d 564, the Village argues that the plaintiffs have failed to show a clear right to the issuance of a writ of *mandamus*. Although the issue in *Dolton* concerned the exercise of home rule authority and the Village here is not a home rule municipality, we believe that the discussion in *Dolton* of the regulation of rail carrier operations by municipalities is applicable to the case before us.

In *Dolton*, the Village of Dolton had enacted an ordinance prohibiting certain obstructions by trains of railroad/highway grade crossings and imposing fines for violations of the ordinance. Following trials at which certain railroads were found guilty and fined for violating the ordinance, the railroads appealed, and the reviewing court found that the ordinance was an unconstitutional exercise of Dolton's home rule powers. In making that determination, the court utilized the three-pronged analysis set forth in *People ex rel. Bernardi v. City of Highland Park*, 121 Ill. 2d 1 (1988), to determine the validity of the exercise of home rule authority. While concluding that the first prong, the extent to which the conduct in question affects matters outside the municipality, could be resolved in Dolton's favor, the court stated as follows:

> "Regarding the second prong, we conclude regulation of railroad operations, including the specific conduct involved here, traditionally has been placed outside the scope of municipal power. Beginning January 1, 1914, the effective date of 'An Act to provide for the regulation of public utilities' (1913 Ill. Laws 459), the General Assembly indicated the intention to vest regulation over railroad operations with State, as opposed to local, government. [Cita-

tions.] Moreover, since July 1, 1921, the effective date of 'An Act concerning public utilities' (1921 Ill. Laws 702), that power is enjoyed exclusively by the Illinois Commerce Commission (Commission). [Citation.] The plenary nature of the Commission's power to regulate railroad-highway grade crossings and to make provision for the safety of the public at such crossings has been long recognized by Illinois courts. [Citation.] Further, on January 1, 1986, the Commission's authority to regulate the field was continued under the Illinois Commercial Transportation Law [(Commercial Act)] (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—1101 *et seq.*), the comprehensive recodification of the then existing transportation regulatory schemes (see Ill. Rev. Stat. 1985, ch. 95½, par. 18c—1102(a))." *Dolton*, 196 Ill. App. 3d at 567-68.

As for the third prong of the test, which level of government has the more vital interest in that regulation (*Bernardi*, 121 Ill. 2d at 13), the *Dolton* court stated:

"Regarding the third prong of the *Bernardi* analysis, we need only look to the stated public policy underlying codification of the [Commercial Act] to conclude the State, rather than the Village, has the more vital interest in regulating rail transportation, in general, and railroad-highway grade crossing, in particular. In section 18c—1103 of the [Commercial Act], the General Assembly expressly recognized the State's interest in 'actively supervis[ing] and regulat[ing] commercial transportation of persons and property within this state,' as the policy foundation for recodification of then existing transportation schemes into the [Commercial Act]. (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—1103.) To the extent municipalities across the State might, through home rule authority, pass ordinances affecting railroad operations, the goals enumerated in section 18c—1103, including 'insur[ing] a stable and well-coordinated transportation system for shippers, carriers and the public,' would be jeopardized. [Citation.] To permit municipalities to exercise concurrent regulation in the field of railroad operations would certainly subject carriers to multiple, and possibly conflicting, governmental requirements and disturb the existing comprehensive regulatory scheme." *Dolton*, 196 Ill. App. 3d at 569-70.

We therefore agree with the Village in this case that, while a municipality may have general statutory authority to abate nuisances such as excessive noise, this authority has been preempted in the area of railroad safety.

In addition, the duty sought to be performed must be a ministerial, nondiscretionary one. *Beer Barn, Inc.*, 227 Ill. App. 3d at 69-70. The duty sought to be performed here is the enforcement of an

ordinance. Whether to prosecute the commission of an offense is within the exclusive discretion of the prosecutor. See *People v. Edgeston*, 243 Ill. App. 3d 1, 11 (1993) (it is within the exclusive discretion of the State's Attorney to choose which of several charges to bring against a defendant or whether to prosecute at all). Therefore, as the enforcement of the nuisance ordinance in this case was a discretionary duty, the plaintiffs are not entitled to a writ of *mandamus*.

We conclude therefore that the trial court did not err in denying a writ of *mandamus* to the plaintiffs.

We now turn to the issue raised by the Village in its separate appeal.

■ The Village contends that the trial court erred in denying its motion for attorney fees pursuant to Supreme Court Rule 137. In its petition for fees, the Village alleged that the plaintiffs' attorney and James Duggan, one of the plaintiffs, were informed at Village board meetings and by correspondence that the Village had no legal basis upon which to stop the railroads from sounding their train horns. In its order denying the request for attorney fees, the trial court stated that the plaintiffs had a legally justiciable claim. On appeal, the Village asserts that it was included in the suit against the railroads only for harassment purposes, because it refused to enforce its nuisance ordinance against the railroads as requested by the plaintiffs.

Rule 137 imposes an affirmative duty on both litigants and attorneys to conduct an investigation of the facts and law before filing an action, pleading, or other paper. *Kellett v. Roberts*, 281 Ill. App. 3d 461, 464 (1996). The rule requires that a party or his or her attorney sign pleadings and other legal papers to certify that he or she has read the document, has made a reasonable inquiry into its basis, and believes that it is well grounded in fact or existing law, or that there is a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. 155 Ill. 2d R. 137.

The decision to award sanctions under Rule 137 is within the sound discretion of the trial court. *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 790 (1992). A trial court abuses its discretion only if no reasonable person would take its view. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995). A court should not impose sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect. *Ambrose v. Thornton Township School Trustees*, 274 Ill. App. 3d 676, 685 (1995).

While the plaintiffs may have presented objectively reasonable arguments in support of the position they took against the railroads, the same is not true of their position as to the Village. The *Dolton* case clearly establishes that a municipality, even a home rule one, may not legislate in the area of railroad safety. *Dolton*, 196 Ill. App. 3d 564. We note that the plaintiffs do not address, let alone attempt to distinguish, the *Dolton* case in their briefs.

The plaintiffs point to the minutes of a Village board meeting (attached to the Village's response to the plaintiffs' answer to the Village's petition for attorney fees) in which the Village clerk reported that two out of seven municipalities surveyed had ordinances in place banning train whistles. However, according to the clerk's report, the creation of such ordinances requires a hearing before the Commission and that the Village sign an agreement with the railroad releasing the railroad from liability in the event of an accident. In other words, the plaintiffs were aware that the Village could restrict the whistle/horn sounding based only upon an ordinance specifically enacted for that purpose and could not utilize its nuisance ordinance to accomplish it.

We conclude that the trial court abused its discretion in failing to award attorney fees pursuant to Rule 137 to the Village, and therefore the case must be remanded to the trial court for a hearing to determine the amount of the award of attorney fees to the Village.

The judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

GEIGER, P.J., and THOMAS, J., concur.