FIRST DIVISION

January 21, 2003

No. 1-01-4060

MICHAEL MORRIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

v. ) )

AMERITECH ILLINOIS, ) Honorable

) Mary Mulhern,

Defendant-Appellee. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

Michael Morris, an Ameritech employee, appeals from the dismissal of his complaint charging Ameritech with eavesdropping on him and inspecting records of his telephone use, thereby invading his privacy.  We affirm 
summary judgment
 on the charge of eavesdropping because Morris did not present admissible evidence that Ameritech knew any of its employees eavesdropped on Morris.  We also affirm judgment on the invasion of privacy count because federal law authorized Ameritech's use of its records to protect its right not to pay employees for time they falsely claimed to have spent working.

In 1995 Morris worked for Ameritech as an installer.  Merilyn Barrett, a security manager for Ameritech, conducted surveillance of Morris's home on April 12, 1995.  She saw Morris's truck in his driveway around 10:20 a.m., and again from 12:45 p.m. until 1:50 p.m.

Barrett looked up phone records detailing calls made from Morris's home during his work hours in February and March 1995.  The message unit detail (MUD) records showed numerous calls during normal work hours those months.  Some days Morris made no calls, and many days the calls came in a single cluster near noon, so that he might have made the calls over his lunch break. But on some days Morris made calls throughout the day.

Most of the calls took little time.  Three-fourths of the calls took less than five minutes.  But one call in particular stood out.  On March 27, 1995, one call from Morris lasted from 10:13 a.m. until 12:15 p.m.

When Morris arrived for work on May 8, 1995, his supervisor told him to meet with Barrett.  Morris contacted a union representative, and Morris and the union representative met with Barrett.  Barrett confronted Morris with evidence he had falsified work records and that he had been home, not working, during some of the hours he claimed to have worked.

Ameritech held a formal dismissal hearing on May 15, 1995.  Kenneth Larimer, from Ameritech's labor relations department, ran the meeting, attended by Morris, Morris's supervisor, and a union representative.  Barrett did not attend the meeting.  The following day Ameritech fired Morris.  Ameritech rehired Morris later in 1995 and assigned him to work as an installer out of an office farther from his home.

In May 1996 Morris sued Ameritech for invasion of privacy by eavesdropping and inspecting the MUD records, and for eavesdropping in violation of section 14-2 of the Criminal Code of 1961 (Code) (720 ILCS 5/14-2 (West 1994)).  Ameritech moved for 
summary judgment
 on the count for violating the Code, and it moved to dismiss the invasion of privacy count.

Ameritech appended excerpts of depositions from Barrett and Morris to the 
summary judgment
 motion.  Morris appended several depositions and affidavits to his response.  In his deposition Morris testified that in the meeting on May 8, 1995, Barrett asked if the two-hour phone call on March 27 involved the hospitalization of one of Morris's children and whether he discussed purchasing his son a car.  Morris answered that he did not remember the call.  Barrett persisted, asking further questions suggesting the subject of the phone call.  Morris subsequently remembered a call to his ex-wife in which they discussed hospitalizing their son for drug rehabilitation and purchasing him a car.  Morris suggests that a fact finder could infer that Barrett must have learned the subject of the two-hour call by eavesdropping.

In his affidavit Morris swore that Larimer, at the meeting on May 15, 1995, "us[ed] the personal information Barrett had known."  Morris said Larimer repeatedly asked him about "what else was going on in [his] personal life which could have caused [him] to be home during the day so often."  But the following colloquy occurred at Morris's deposition:

"Q. Now, isn't it true when Mr. Larimer started asking you about the reasons that you were going home and falsifying records, you also stated to him that your wedding of April 15th was growing near and you were having problems with the kids and your ex-wife?

A. Correct.

Q. And at this meeting you did become emotionally distraught?

A. Correct.

* * *

Q. And specifically what private facts are you saying were disclosed at the dismissal panel hearing and by whom?

A. In regards to my son's hospitalization.

Q. So those – you're speaking of the things that you brought out when you were distraught at the dismissal panel hearing?

A. Correct.

Q. That you told to the people at the dismissal panel hearing?

A. Correct."

Larimer testified in his deposition that, at the meeting on May 15, Morris volunteered information about his personal problems when asked to explain the falsified work records.  Larimer believed that Morris said the two-hour phone call concerned hospitalization of Morris's son.

Morris, in his affidavit, swore that his fiancée and his ex-wife both complained of hearing clicks on their phone lines.  He added that an Ameritech security investigator said, during a training seminar, that Ameritech's security personnel routinely listen to phone calls of employees under investigation.  Morris admitted that Ameritech instructed technicians to disengage immediately from any phone line in use because they should never listen in to calls between customers.

Barrett's supervisor, who was in charge of Ameritech's corporate security department, admitted that Ameritech employees sometimes eavesdrop on customer calls.  Ameritech fires any employee caught eavesdropping.  Security personnel have no authority to eavesdrop on the home telephone calls of employees under investigation.  In particular, Barrett did not have authorization for eavesdropping on Morris's telephone calls.

Barrett testified that she did not eavesdrop on Morris's calls.  She did not supervise anyone.

For the purpose of resolving the motion for 
summary judgment
, the trial court assumed that Morris could prove that Barrett eavesdropped on him.  The court granted Ameritech 
summary judgment
 on the count for violating the Code, because Morris did not present sufficient evidence to show that Ameritech bore responsibility for the alleged eavesdropping.  The court then dismissed the count for invasion of privacy on grounds that Ameritech had the right to use the MUD records to find out whether Morris had falsified his work records.

Morris moved to reconsider.  In the motion he sought leave to amend the count for invasion of privacy.  He did not append a proposed amendment to the motion.

ANALYSIS

I

On appeal Morris argues that he presented sufficient evidence to survive 
summary judgment
 on the count charging Ameritech with eavesdropping in violation of Code section 14-2, which provides:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation ***;  or

(b) Uses or divulges *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device."  720 ILCS 5/14-2 (West 1994). 

We review the 
summary judgment
 
de novo
. 
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001).

First, Morris argues that Ameritech, acting through Barrett, directly violated the Code.  Section 5-4(a) of the Code establishes when a corporation bears criminal responsibility for a violation of the Code:

"A corporation may be prosecuted for the commission of an offense if, but only if:

(1) The offense is a misdemeanor, ***  and an agent of the corporation performs the conduct which is an element of the offense while acting within the scope of his or her office or employment ***;  or

(2) The commission of the offense is authorized, requested, commanded, or performed, by the board of directors or by a high managerial agent who is acting within the scope of his or her employment in behalf of the corporation." 720 ILCS 5/5-4(a) (West 1994).

Thus, a corporation can commit a misdemeanor through the acts of its agents, but it can commit a felony only through the acts of high managerial agents.  Eavesdropping is a felony. 720 ILCS 5/14-4 (West 1994).  Therefore, Ameritech can be criminally liable for eavesdropping only through the acts of high managerial agents.

A high managerial agent is "an officer of the corporation, or any other agent who has a position of comparable authority for the formulation of corporate policy or the supervision of subordinate employees in a managerial capacity." 720 ILCS 5/5-4 (West 1994).  Barrett, who is not an officer of Ameritech, had no supervisory authority over any other Ameritech employee.  Morris presented no evidence that Barrett formulated corporate policy.  Thus, the evidence presented demands the conclusion that Barrett is not a high managerial agent of Ameritech.

Morris contends that his affidavit supplies sufficient evidence that Ameritech's high managerial agents authorized security personnel to eavesdrop.  In the affidavit Morris swore that an unidentified security investigator said, during a training seminar, that security personnel routinely listened to the phone calls of persons under investigation.  Morris seeks to use the investigator's out-of-court statement as substantive evidence that security personnel routinely, and with the implicit approval of management, eavesdropped on the phone calls of employees.  The evidence is hearsay. See 
Leonardi v. Loyola University of Chicago
, 168 Ill. 2d 83, 99 (1995).  Morris does not explain why the court should accept this hearsay as admissible evidence.  No admissible evidence in the record explains how the investigator came to attend the training seminar or in what circumstances Morris heard the remark.  This court must not consider the inadmissible hearsay on this motion for 
summary judgment
. See 
Lajato v. AT&T, Inc.
, 283 
Ill. App. 3d
 126, 137 (1996).

Barrett's supervisor testified that he did not authorize Barrett to eavesdrop, and Ameritech fires any employee found to have eavesdropped.  Morris did not present any admissible evidence that any high managerial agent authorized or requested Barrett to eavesdrop on Morris.  The evidence cannot support a finding that Ameritech, as a corporation, committed the felony of eavesdropping.

The Code establishes that a principal may be civilly liable for an agent's eavesdropping even if the principal is not criminally responsible. 720 ILCS 5/14-6(1)(b)(West 1994).  In the context of civil liability for eavesdropping,

"A principal is any person who:

(1) Knowingly employs another who illegally uses an eavesdropping device in the course of such employment;  or

(2) Knowingly derives any benefit or information from the illegal use of an eavesdropping device by another[.]" 720 ILCS 5/14-1 (West 1994).

Morris contends that Ameritech is responsible as a principal for its agent Barrett because Ameritech knew it employed Barrett and Barrett eavesdropped on Morris in the course of her employment.

The federal court encountered this interpretation of the Code in 
Cebula v. General Electric Co.
, 614 F. Supp. 260 (N.D. Ill. 1985).  In that case the 
plaintiff
's supervisor, Taken, tape recorded a conversation he had with the 
plaintiff
 prior to discharging the 
plaintiff
.  The court held that General Electric, the 
defendant,
 did not qualify as a principal under the Code because the 
defendant
 did not knowingly employ the supervisor to tape the conversation.  The court said:

"Cebula's argument assumes that the Act's words 'knowingly employ' merely mean that GE must have known that it employed Taken. We disagree with this reading of the Act. Such a reading renders the word, 'knowingly,' superfluous, since the statute could make the same point without the word. We think it clear from the context of the statute that the employer must 
know
 that the employee is eavesdropping within the scope of his employment. This reading gives meaning to the word 'knowingly.'" (Emphasis in original.)  
Cebula
, 614 F. Supp. at 267 n.4.

We agree with the federal court.  Employers, as a rule, know whom they employ.  The statute, as Morris interprets it, leaves the employer liable for eavesdropping whenever any known employee eavesdrops in the course of employment, regardless of the employer's notice of the possibility of eavesdropping and regardless of the employer's efforts to prevent eavesdropping.  The General Assembly could have imposed liability in such circumstances without using the word "knowingly" in the statute.  While the statute is somewhat awkwardly phrased, we find that the general assembly meant to impose liability only if the employer knows that its employee is eavesdropping.

Morris claims that he can prove that Larimer knew that Barrett eavesdropped on Morris and Ameritech knowingly benefitted from the eavesdropping.  In his affidavit Morris asserted that Larimer, a high managerial agent, asked questions about Morris's personal life, "using the personal information Barrett had known."  But Morris did not specify the questions Larimer asked or how the questions used any personal information.

In his deposition Morris admitted that, at the meeting with Larimer, Morris supplied the personal information about himself.  Larimer corroborated that testimony.  Morris's conclusory statement in his affidavit that Larimer used information he learned from Barrett cannot overcome the deposition testimony concerning the source of the personal information.  See 
Jones v. Dettro
, 308 
Ill. App. 3d
 494, 499 (1999).  Larimer's unspecified use of personal information does not create a triable issue of fact on the issue of whether Larimer knew Barrett eavesdropped on Morris.

The head of Ameritech's security department knew of some instances in which employees eavesdropped on customer calls.  Morris argues that a fact finder could infer that Ameritech's high managerial agents, including Larimer, must have known that Barrett eavesdropped to obtain the personal information she used in the meeting with Morris on May 8, 1995.

The argument has one gaping hole.  Morris offered no evidence that Larimer or any other high managerial agent of Ameritech knew what Barrett said at the meeting on May 8.  Only Morris, Barrett, and a union representative attended that meeting.  While Barrett must have told her superiors something about her investigation before the meetings, her notes indicate only that she told them about seeing Morris's van at his home during work hours, and she told them about the MUD records.  Barrett would have strong motives for concealing her eavesdropping, if it occurred: Ameritech had a policy of firing any employee known to have eavesdropped.  The evidence cannot support an inference that Larimer or any other Ameritech manager knew Barrett eavesdropped.  Thus, the evidence does not show that Ameritech knowingly benefitted from the eavesdropping.  The trial court correctly granted Ameritech 
summary judgment
 on the count for eavesdropping in violation of section 14-2 of the Code.

II

A

Ameritech also moved, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1998)), to dismiss the count for invasion of privacy.  Section 2-615 authorizes dismissal where the complaint fails to state a cause of action.  Morris alleged that Ameritech invaded his privacy both by inspecting records of his phone use and by eavesdropping.  Morris argues that the count sufficiently states a claim based on Ameritech's eavesdropping and, therefore, the trial court should not have granted the motion to dismiss pursuant to section 2-615.

We agree.  Ameritech did not challenge the sufficiency of the allegations regarding eavesdropping in the motion to dismiss.  In effect, Ameritech sought 
summary judgment
 on the charge of invasion of privacy by eavesdropping, while it sought dismissal of the charge related to MUD records for failure to state a claim, without distinguishing the two separate bases for the motion regarding the invasion of privacy count.  Thus, Ameritech presented an improper hybrid motion. See 
Janes v. First Federal Savings & Loan Ass'n of Berwyn
, 57 Ill. 2d 398, 406 (1974).

However, we need not remand for correction of the motion because Morris suffered no prejudice from the improper designation of the motion.  See 
Janes
, 57 Ill. 2d at 407.  Morris had full opportunity to respond to arguments concerning evidence of eavesdropping before the ruling on the count charging Ameritech with violating section 14-2 of the Code, while the motion to dismiss the invasion of privacy count focused attention on the legal sufficiency of the claim based on use of the MUD records.  We review dismissal of the invasion of privacy count 
de novo
. 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993).

Morris argues that, under the common law of agency, Ameritech is liable as the principal for the acts of its agent Barrett.  We find that the Code preempts the common law for imposition of civil liability on a principal for an agent's eavesdropping. 

Section 14-6 of the Code sets out circumstances in which a principal may be civilly liable for the acts of its agents when the agents eavesdrop.  In the absence of the statute, the common law of agency would govern the principal's liability for the agent's eavesdropping.  In general, where a statute applies to an area formerly covered by the common law, we interpret the statute as adopting the common law unless the general assembly clearly and specifically expressed an intention to change the common law.  
In re Visitation With C.B.L.
, 309 
Ill. App. 3d
 888, 890-91 (1999).  But once "the legislature has provided a remedy on a subject matter[,] we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree."  
Debolt v. Mutual of Omaha
, 56 Ill. App. 3d 111, 116 (1978).  

In 
Debolt
 the 
defendant
, an insurance company, refused to pay disability benefits it owed to its insured, the 
plaintiff
.  The 
plaintiff
 sought to recover punitive damages at common law for breach of the duty of good faith and fair dealing.  The court held that the General Assembly preempted any such common law action against the insurer by adopting a statute that permitted the insured to recover specified amounts if the insurer unreasonably and vexatiously refused to pay benefits due. 
Debolt
, 56 
Ill. App. 3d
 at 116; see also 
Mazur v. Hunt
, 227 
Ill. App. 3d
 785, 788-89 (1992); 
C.B.L.
, 309 
Ill. App. 3d
 at 894.

We find the reasoning of 
Debolt
 
and 
C.B.L.
 applicable here.  By adopting section 14-6 of the Code, our General Assembly established limits on the cases in which a principal may be held civilly liable for eavesdropping by an agent.  Thus, the reasons for granting 
summary judgment
 on the count for violation of section 14-2 of the Code constitute sufficient grounds for granting 
summary judgment
 on the claim for invasion of privacy by eavesdropping.

B

Morris claims that Ameritech invaded his privacy by searching MUD records for evidence that he had been at home, making telephone calls, at times he claimed to have spent working on installations.  The decision in 
Schmidt v. Ameritech Illinois
, 329 
Ill. App. 3d
 1020 (2002), controls our determination here.

Schmidt, an Ameritech employee, received disability benefits from Ameritech in 1994.  Ameritech's disability policy required any disabled employee to obtain written authorization for any vacation taken while on disability leave.  Schmidt's supervisor reviewed MUD records for Schmidt's home.  The records helped the supervisor identify the Canadian resort where Schmidt vacationed while receiving disability benefits.  Schmidt sued Ameritech for unreasonable intrusion upon seclusion.  The trial court entered judgment on a jury verdict in favor of Schmidt, and Ameritech appealed.

The appellate court observed that Schmidt's cause of action, like any action for invasion of privacy, required pleading and proof of an unauthorized act that invaded the 
plaintiff
's privacy. 
Schmidt
, 329 
Ill. App. 3d
 at 1030.  The court found that federal telecommunications law authorized Ameritech "to use its records to protect its rights and property." 
Schmidt
, 329 
Ill. App. 3d
 at 1032.  The restriction on vacations during disability protected Ameritech's interest in paying only once for each employee's allotted vacation time.  Schmidt's deceptive receipt of disability pay for time spent on vacation would result in Ameritech paying for a second vacation when Schmidt took his allotted vacation time after returning from the disability.  The court held that "[b]ecause Ameritech's investigation into an unnecessary depletion of its monetary resources necessarily involves a protection of its rights and property, especially in light of [Schmidt's] admittedly deceitful actions, we find that Ameritech's conduct was authorized and protected" by the federal statute.  
Schmidt
, 329 
Ill. App. 3d
 at 1034.

Thus, under 
Schmidt
, federal law authorized Ameritech to use its records, including MUD records, to protect its rights and property.  Ameritech has a property interest in not paying its employees, like Morris, for work at times when the employees are at home and not working.

Morris points out that his complaint on its face does not allege facts showing that Ameritech used the MUD records to investigate allegedly false work records or to protect any other property interest.  The complaint does not itself state facts showing that federal law authorized the intrusion.  Therefore, Morris argues, the trial court should not have dismissed the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1998)), which allows dismissal only where the complaint on its face fails to state a cause of action.

Even if the trial court reasoned incorrectly or based the dismissal on the wrong statute, we may affirm the trial court's judgment on any basis supported by the record. 
Leonardi
, 168 Ill. 2d at 97.  Assuming that Morris pled sufficient facts to survive the motion to dismiss under section 2-615, we find nonetheless that the record requires entry of 
summary judgment
 in favor of Ameritech.  The depositions and affidavits all show that Ameritech used the MUD records to investigate its suspicions that Morris falsified work records and sought payment for work time he actually spent at home doing no work for Ameritech.  The court in 
Schmidt
 held that federal law authorized this use of MUD records.  Morris does not explain what evidence he could have presented on a proper 
summary judgment
 motion to show that Ameritech used the MUD records in ways not authorized by federal law.  Because Morris cannot show an unauthorized use of the phone records, the trial court correctly entered judgment in favor of Ameritech.

C

Finally, Morris contends that the trial court erred by denying him leave to amend the count for invasion of privacy.  Nothing in the record on appeal indicates what changes Morris would have made to the count or what facts he would have pled to show Ameritech lacked authorization for the use it made of the MUD records.  By failing to include a proposed amended complaint in the record on appeal, Morris waived the issue of whether the trial court abused its discretion by denying him leave to amend. 
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507, 521 (1987).

CONCLUSION

Ameritech is not criminally responsible for Barrett's alleged eavesdropping because Barrett is not a high managerial agent of Ameritech and Morris presented no admissible evidence that any high managerial agent authorized Barrett to eavesdrop on Morris.  Ameritech cannot be civilly liable as the principal for Barrett's alleged eavesdropping because Morris presented no evidence that Ameritech's high managerial agents knew that Barrett eavesdropped on Morris.  Under 
Schmidt
, Ameritech had authorization to use MUD records to determine whether Morris falsified work records.  We need not decide whether the trial court should have dismissed any part of the complaint under section 2-615 of the Code of Civil Procedure Law, because the record supports the entry of 
summary judgment
 in favor of Ameritech on both counts of the complaint.  Accordingly, we affirm the judgment dismissing Morris's complaint.

Affirmed.

GORDON, P.J. and O'MALLEY, J., concur.