JOHN NICKELS *et al.*, Plaintiffs-Appellees, v. JIM BURNETT *et al.*, Indiv. and d/b/a Burnett Farms, Defendants-Appellants.

Second District   No. 2—03—0414

Opinion filed October 20, 2003.

Watson B. Tucker, of Smith, Tucker & Brown, of DeKalb, for appellants.

Charles E. Cronauer, of Law Offices of Charles E. Cronauer, and Richard L. Turner, Jr., of Law Office of Richard L. Turner, Jr., both of Sycamore, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants, Jim and Christine Burnett, appeal the order of the circuit court of De Kalb County granting plaintiffs' motion for a preliminary injunction enjoining defendants from constructing a hog confinement facility pursuant to letters authorizing the construction of such a facility issued by the Illinois Department of Agriculture (Department). Defendants contend that the trial court erroneously ruled on the petition for a preliminary injunction without first requir-

ing plaintiffs to exhaust their administrative remedies pursuant to the Livestock Management Facilities Act (Act) (510 ILCS 77/1 *et seq.* (West 2002)). We affirm.

Plaintiffs are landowners in De Kalb County near Hinckley, Illinois. Defendants own and farm property in the same area. In 2002, defendants began the process to construct a facility to maintain 8,000 head of hogs on their property. The construction and operation of such a facility is governed by the Act. On April 11, 2002, pursuant to section 11(a) of the Act, defendants sent to the Department their notice of intent to construct the hog facility.

During the remainder of 2002, defendants worked with the Department to secure authorization to begin to construct the hog facility. On December 13, 2002, the Department issued three letters to defendants granting them permission to proceed with the construction of the facility. On December 16, 2002, plaintiffs filed the instant suit, alleging that the proposed facility would be a nuisance pursuant to section 47—5(8) of the Criminal Code of 1961 (720 ILCS 5/47—5(8) (West 2002)) and a De Kalb County ordinance (De Kalb County Code § 30—88), as well as a nuisance pursuant to common-law principles of public and private nuisance. Plaintiffs' complaint in this matter does not name the Department as a party defendant or seek review of the Department's issuance of the letters authorizing defendants to begin construction of the hog facility. Also on December 16, 2002, plaintiffs filed a motion seeking a preliminary injunction prohibiting defendants from beginning construction of the hog facility. Plaintiffs submitted extensive evidence in the form of affidavits and scholarly articles authored by their expert affiants demonstrating that, if the hog facility were to begin operation, plaintiffs would experience substantially harmful health effects and a significant loss of value to their land.

On February 25, 2003, defendants filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2002)), arguing that plaintiffs had failed to exhaust their administrative remedies. On March 14, 2003, plaintiffs filed a second lawsuit seeking judicial review of the Department's decision to allow defendants to begin construction of the hog facility. While we take judicial notice of the fact of the filing of the second lawsuit, neither it nor any issues contained in the pleadings therein are before us.

On March 27, 2003, the trial court granted plaintiffs' motion for a preliminary injunction. The trial court found that "the proposed hog finishing operation presents a high probability of creating a public and private nuisance in creating an environment injurious to the health and welfare of surrounding neighbors (the Plaintiffs) and the public at

large." The trial court further found that plaintiffs "have a right to pursue a common law nuisance action in spite of the pending judicial review of the action of the [Department] in granting a permit to Defendants to construct their facility." The trial court also denied defendants' motion to dismiss. On April 16, 2003, defendants filed a timely amended notice of interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (Official Reports Advance Sheet No. 5 (March 5, 2003), R. 307(a)(1), eff. January 1, 2003).

On appeal, defendants argue that the trial court's action in entertaining plaintiffs' cause constituted a violation of the doctrine of separation of powers and exceeded the trial court's powers. Defendants also argue that the grant of the preliminary injunction was erroneous because plaintiffs did not exhaust their administrative remedies before pursuing this cause. Last, defendants contend that the trial court abused its discretion in granting the preliminary injunction. We will consider each argument in turn.

■ Initially, defendants contend that the trial court violated the doctrine of separation of powers. The Illinois Constitution provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Defendants argue that, by granting plaintiffs a preliminary injunction, the trial court ignored the requirements of the Act, thereby effectively rewriting it. According to defendants, the Act provides the framework whereby to construct their hog facility. Defendants argue that plaintiffs' nuisance suit circumvents the requirements of the Act and that the trial court ignored the Act in granting the preliminary injunction.

■ Defendants properly note that the Act was clearly within the purview of the legislature to enact. Defendants fail, however, to specify the manner in which the trial court's action usurped legislative power or otherwise violated the separation-of-powers doctrine. Plaintiffs did not bring this action pursuant to the Act; rather, they sought relief under various theories of public and private nuisance. Thus, nothing in the trial court's actions directly contravened the dictates of the Act.

The cases cited by defendants in support of their position regarding the violation of the separation-of-powers doctrine are inapposite. *People v. Garner*, 147 Ill. 2d 467, 474-75 (1992), involved the trial court's responsibility, pursuant to section 113—4(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 113—4(e) (now 725 ILCS 5/113—4(e) (West 2002))), to admonish the defendant regarding trial *in absentia* should the defendant fail to appear at later hearings. There, the State urged the court to create an "experienced criminals" exception to section 113—4(e) of the Code of Criminal

Procedure. *Garner*, 147 Ill. 2d at 475. The court refused, finding that inserting such a provision into the statute where it was not present in its plain language would involve rewriting the statute and therefore violate the separation-of-powers doctrine. *Garner*, 147 Ill. 2d at 475-76. Here, by contrast, the trial court was not called upon to interpret the Act in any fashion. Therefore, it did not "annex to [the Act] a provision or condition which the General Assembly did not see fit to impose." *Garner*, 147 Ill. 2d at 476.

Similarly, in *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493 (2000), the court was required to interpret sections 6—105 and 6—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/6—105, 6—106 (West 1992)). The plaintiff argued in favor of a public-policy-based interpretation of the Tort Immunity Act that would not immunize the defendant doctors. The court held that, "[b]ecause the concerns voiced by [the] plaintiff compete with the legislative purposes of the immunity provisions as revealed by the statute's plain language, we believe that these are questions appropriately left to the legislature." *Michigan Avenue National Bank*, 191 Ill. 2d at 522. Here, again, there is no interpretation of the Act at issue in which the trial court could have improperly added a "provision or condition which the General Assembly did not see fit to impose." *Garner*, 147 Ill. 2d at 476.

In *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 297 (2003), the defendant's argument regarding the wisdom of various provisions of the Nursing and Advanced Practice Nursing Act (225 ILCS 65/5—1 *et seq.* (West 2000)) was rejected by the court, which stated that "whether a course chosen by the legislature to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry." The court then rejected the defendant's argument on separation-of-powers grounds. *Sherman*, 203 Ill. 2d at 297. Here, as in *Sherman*, it is not our province to render a decision based upon "whether a course chosen by the legislature to achieve a desired result is either wise or the best means available." *Sherman*, 203 Ill. 2d at 297. *Sherman* is inapposite.

Last, defendants cite *People ex rel. Daley v. Moran*, 94 Ill. 2d 41 (1983). There, the trial court ordered the State's Attorney to file a criminal information against a defendant. The court held that the trial court improperly intruded upon the prerogatives of the executive branch as embodied by the State's Attorney. *Daley*, 94 Ill. 2d at 46. Here, the trial court did not require a party to perform an action more appropriately suited to another governmental branch; it merely adjudicated the controversy presented to it by the parties. The cases

cited by defendants in support of their separation-of-powers argument, therefore, are wholly inapposite.

Next, defendants argue that plaintiffs did not exhaust their administrative remedies. On December 13, 2002, the Department issued letters authorizing defendants to begin constructing the hog facility. Plaintiffs petitioned the Department to reconsider its decision. On February 12, 2003, the Department denied plaintiffs' petition to reconsider and informed plaintiffs that "the Director's decision is a final decision of the Department. If the Director's Order is against the Petitioner[s], then the Petitioner[s] may request relief from the Circuit Court by *Writ of Certiorari*." (Emphasis in original.) Defendants claim that plaintiffs' next step should have been to seek administrative review of the Department's decision. Not necessarily.

Given the procedural posture of the case, namely, that plaintiffs had filed an action alleging public and private nuisance based on both statutory authority and common law, there was no obligation upon plaintiffs, in the strict confines of this action, to have sought review of the Department's orders granting defendants permission to build the hog facility. Thus, defendants' argument, on its own terms, is without merit.

We perceive, however, that defendants are actually attempting to make a preemption argument. Both the separation-of-powers and exhaustion-of-administrative-remedies arguments skirt the issue of preemption. We thus view defendants as attempting to argue that, because the Act provides a comprehensive scheme regulating and controlling the building and operating of a livestock management facility, the legislature has preempted the field. Under this argument, defendants contend that plaintiffs were precluded from filing a nuisance action altogether. Instead, plaintiffs were required to seek a writ of *certiorari* seeking review of the Department's administrative decision to allow defendants to begin construction of the hog facility.

■ Generally, "where a statute applies to an area formerly covered by the common law, we interpret the statute as adopting the common law unless the General Assembly clearly and specifically expressed an intention to change the common law." *Morris v. Ameritech Illinois*, 337 Ill. App. 3d 40, 49 (2003). However, where the legislature has provided a remedy on a subject, the courts will not add to or expand the legislative remedy through the interpretation of the legislative enactment. *Morris*, 337 Ill. App. 3d at 49. Where the legislature intends to preempt the subject matter at common law through a statutory enactment, it will clearly specify that intent. See, *e.g.*, 820 ILCS 305/1 *et seq.* (West 2002) (Workers' Compensation Act); 720 ILCS 5/14—6 (2002) (civil liability for eavesdropping); 235 ILCS 5/6—21

(West 2002) (Dramshop Act). In *McClaughry v. Village of Antioch*, 296 Ill. App. 3d 636, 639 (1998), the court determined that the legislature had given the Illinois Commerce Commission plenary and exclusive jurisdiction over all aspects of railway safety issues. The court held that this statutorily exclusive jurisdiction foreclosed the plaintiff from maintaining a nuisance action. *McClaughry*, 296 Ill. App. 3d at 644.

■ With these principles in mind, we review the Act at issue in this cause. The Act is a comprehensive scheme regulating the construction and operation of livestock management facilities. The legislative intent or policy behind the Act is as follows:

"(a) The General Assembly finds the following:

(1) Enhancements to the current regulations dealing with livestock production facilities are needed.

(2) The livestock industry is experiencing rapid changes as a result of many different occurrences within the industry including increased sophistication of production technology, increased demand for capital to maintain or expand operations, and changing consumer demands for a quality product.

(3) The livestock industry represents a major economic activity in the Illinois economy.

(4) The trend is for larger concentration of animals at a livestock management facility due to various market forces.

(5) Current regulation of the operation and management of livestock production is adequate for today's industry with a few modifications.

(6) Due to the increasing numbers of animals at a livestock management facility, there is a potential for greater impacts on the immediate area.

(7) Livestock waste lagoons must be constructed according to standards to maintain structural integrity and to protect groundwater.

(8) Since a majority of odor complaints result from manure application, livestock producers must be provided with an educational program that will enhance neighbor awareness and their environmental management skills, with emphasis on management of livestock wastes.

(b) Therefore, it is the policy of the State of Illinois to maintain an economically viable livestock industry in the State of Illinois while protecting the environment for the benefit of both the livestock producer and persons who live in the vicinity of a livestock production facility." 510 ILCS 77/5 (West 2002).

Thus, the purpose of the Act is twofold: to promote the livestock industry and to make sure that the livestock industry is a good neighbor to nearby residents. The Act also provides that "[n]othing in

this Act shall be construed as a limitation or preemption of any statutory or regulatory authority under the Illinois Environmental Protection Act [(415 ILCS 5/1 *et seq.* (West 2002))]." 510 ILCS 77/100 (West 2002).

■ Our examination of the Act reveals that the legislature included no mechanism whereby to punish or prevent violations of the Act. Further, the Act created no remedy, either public or private, for any violation of it. In order to preempt the field, the legislature is required either to state clearly its intention to do so or to create a new statutory remedy in an area already otherwise controlled by the common law. *Morris*, 337 Ill. App. 3d at 49. Additionally, the Act explicitly states that it is not to limit or preempt the Illinois Environmental Protection Act (Protection Act), which would otherwise control the subject matter of the construction and operation of livestock management facilities. The Protection Act has been held not to preempt nuisance and other statutory and common-law causes of action. *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 183 (1989) (Protection Act does not preempt common-law actions; the plaintiffs were able to maintain a nuisance action). Because of the lack of an express intention to preempt causes of action not based upon the Act, the lack of any codification of the common law, and the lack of any new remedies, we conclude that the Act does not preempt the field. Therefore, plaintiffs were able to maintain a cause of action for nuisance without regard to the administrative proceedings and review that would accompany the decision on defendants' notice of intent to construct a hog management facility.

We recognize the import of defendants' argument. Why would the legislature have created such a comprehensive scheme to regulate and control the construction and operation of livestock management facilities if it had not intended to preempt all causes of action involving these facilities? We have no good answer to that question. (Indeed, the question itself suggests that the Act is nothing more than a dead letter.) Further, it is not our place to provide such an answer; that responsibility falls squarely upon the legislature. Our responsibility is to implement the legislative intent as revealed by the plain language employed in the Act. That language is devoid of an intent to carry through with the promise engendered by the structure of the Act, namely, that the Act alone would provide a vehicle regulating the construction and operation of livestock management facilities. Thus, we have shown that the Act is largely chimerical; it declares that it is attempting to promote the livestock-raising industry, yet in the final analysis, it provides neither encouragement nor protection to those who must utilize the Act. Such a person could gain complete

Departmental approval and permission in his endeavors, and yet still have those endeavors halted, as here, should his operations run afoul of other statutory or common-law prohibitions. Nevertheless, we must properly cede the resolution of this apparent contradiction to the wisdom of the legislature to address and correct, if it so chooses. Indeed, we would violate the separation-of-powers doctrine were we to read into the Act a provision preempting causes of action arising out of the construction and operation of livestock management facilities, for then, we truly would have "annex[ed] to [the Act] a provision or condition which the General Assembly did not see fit to impose." *Garner*, 147 Ill. 2d at 476.

In summary, therefore, we find defendants' arguments, both explicit and implied, to be without merit. Neither separation of powers nor exhaustion of administrative remedies is entirely apposite to this cause. Further, the legislative intent that the Act preempt causes of action arising out of the construction and operation of livestock management facilities is absent. As a result, we hold that the trial court properly considered the subject matter of plaintiffs' cause of action notwithstanding the fact that it was not brought pursuant to the Act and properly rejected defendants' arguments.

■ Defendants last argue that the trial court abused its discretion in granting plaintiffs' motion for a preliminary injunction. A preliminary injunction is intended to preserve the status quo until the merits of the case can be decided. *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002). A preliminary injunction should be granted only when an emergency exists and serious harm would result if the injunction were not issued. *Klaeren*, 202 Ill. 2d at 177. We will not disturb the trial court's decision to grant a preliminary injunction absent an abuse of discretion. *Klaeren*, 202 Ill. 2d at 177. An abuse of discretion occurs when no reasonable person would take the trial court's view. *Anest v. Audino*, 332 Ill. App. 3d 468, 479 (2002).

■ Plaintiffs correctly observe that they included evidence in the form of expert affidavits and scholarly articles discussing the harms that would likely arise from the operation of defendants' proposed hog facility. Defendants, by contrast, neither denied the allegations of plaintiffs' claims nor attached any counteraffidavits to challenge plaintiffs' assertions. Thus, plaintiffs assert, and we agree, that defendants cannot now on appeal challenge the merits of the claims by which they sought the preliminary injunction.

Defendants maintain, however, that the preliminary injunction was improper because plaintiffs' claims were for harms that were not imminent. Defendants had not yet broken ground on the construction, to say nothing of lodged any hogs in the facility. Thus, according to

defendants, plaintiffs' preliminary injunction was premature as there was as yet no harm to be enjoined.

While defendants' argument has surface appeal, it nevertheless fails. It is well settled that a plaintiff may seek to enjoin an activity that may lead to substantial future harm. "[A] *prospective* nuisance is a fit candidate for injunctive relief." (Emphasis in original.) *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 25 (1981). A " 'defendant may be restrained from entering upon an activity where it is highly probable that it will lead to a nuisance, although if the possibility is merely uncertain or contingent he may be left to his remedy after the nuisance has occurred.' " *Wilsonville*, 86 Ill. 2d at 26, quoting W. Prosser, Torts § 90, at 603 (4th ed. 1971). Thus, if plaintiff has made the requisite showing that harm is highly likely, a preliminary injunction may issue.

In *Wilsonville*, 86 Ill. 2d at 26-27, the defendant's attempt to establish and operate a chemical waste disposal site was properly enjoined where the trial court heard conflicting evidence regarding the hazards likely to arise. The trial court accepted the plaintiff's evidence, finding that it showed that it was highly probable that the highly toxic chemical waste deposited at the site could escape, either through explosions, migration, subsidence of the site itself, or groundwater. The court found no abuse of discretion in granting the preliminary injunction, observing that "[a] court does not have to wait for [the harm] to happen before it can enjoin such a result." *Wilsonville*, 86 Ill. 2d at 27.

Here, similarly, plaintiffs presented extensive evidence of the potential harms to their health and to the values of their lands should the hog facility begin to operate. Moreover, the evidence submitted by plaintiffs indicated that the harms described were substantially certain to occur should the hog facility begin operations in its present proposed location. Defendants chose not to controvert this evidence. As injunctive relief is available to redress substantially certain prospective harm, we can find no abuse of discretion in the trial court's decision to grant the preliminary injunction based on the record before us.

Accordingly, we affirm the judgment of the circuit court of De Kalb County.

Affirmed.

BYRNE and KAPALA, JJ., concur.