No. 2--07--0362    Filed: 6-18-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WINNEBAGO COUNTY CITIZENS FOR CONTROLLED GROWTH, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--MR--239 |
| THE COUNTY OF WINNEBAGO, SCOTT H. CHRISTIANSEN, in His Official Capacity, DAVID F. JOHNSON, in His Official Capacity, WINNEBAGO COUNTY ZONING BOARD OF APPEALS, CAROL WILKE, in Her Official Capacity, and DYN CANNELL, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (Rockton Township, The Village of Rockton, Dale Adams, in His Official Capacity, Martin Simpson, in His Official Capacity, David DeGroot, in His Official Capacity, Ruth Ann Roth, in Her Official Capacity, Scott Scull, in His Official Capacity, Winnebago County Health Department, Ann O. Schroeder, Thomas E. Jencius, Cynthia S. Campbell, Gerald A. Paulson, Natural Land Institute, Larry A. Weber, Clifford D. Wilson, Bernard E. Walsh, Mark A. Baker, Farm Bureau Board of Winnebago County, Elaine Pierce, Cheryl Bradley, Diane Ott, Donald J. Stein, Marie Darin, Kathleen Gummow, Carrie Schommer, and Shirland School District Number 134, Defendants). | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Janet R. Holmgren, Judge, Presiding. |

PRESIDING JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiff, Winnebago County Citizens for Controlled Growth (WCCCG), filed suit following the passage of an ordinance by the defendant, the County of Winnebago, which granted the defendant Dyn Cannell, LLC, a special use permit to construct a planned community development (PCD) in Rockton, Illinois. The defendants moved to dismiss the complaint, arguing that WCCCG lacked standing to bring the suit. The trial court denied the motion to dismiss as to counts III and IV of the complaint, but granted the motion as to counts I and II and dismissed those counts, finding that there was no just reason to delay enforcement or appeal of its order. WCCCG appealed. We reverse and remand.

PROCEDURAL BACKGROUND

On January 31, 2006, Dyn Cannell filed an application for a special use permit allowing it to build a PCD on approximately 123 acres of land in Winnebago County (the subject property). The majority of the lots in the PCD were to be 27,000 square feet, and the average lot size was to be approximately 33,000 square feet. In addition to single-family homes, the PCD was to include a sports recreation area, a playground, and additional open space or recreational areas.

According to WCCCG, the subject property is located approximately one-half mile north of the Nygren Wetlands, a nature preserve. The subject property is at a higher location than the wetlands, allowing runoff to flow into the wetlands from the subject property. The Winnebago County Soil and Conservation District determined that 87.7% of the soil within the subject property is suitable for a conventional septic absorption system, but the sandy nature of the soil requires a "restricted" rating mandating a minimum lot size of 43,650 square feet. The remaining soils within the subject property cannot support septic systems.

On April 18, 2006, the Winnebago County Zoning Board of Appeals held a hearing on the application. An attorney for Dyn Cannell spoke in support of the PCD application. An attorney for some of the objectors (the same attorney that currently represents WCCCG) questioned Dyn Cannell's attorney regarding certain aspects of the proposal and made a closing statement. In addition, 15 private citizens appeared and spoke against the PCD application. Following these comments, the zoning board deliberated publicly. Board members expressed concern that the proposed PCD could be detrimental to or endanger the public welfare because septic systems were proposed for lots of less than 43,650 square feet. Other negative comments related to the lot size (less than one acre) as being out of character for the largely rural surrounding area and to the lack of information regarding the PCD's likely impact on utilities, access roads, other necessary facilities, and traffic. The zoning board voted unanimously to deny the PCD application.

On June 8, 2006, the PCD application came before the Winnebago County Board. The minutes of the meeting do not reflect any discussion or findings related to the PCD. The county board voted 19 to 4 to approve the PCD, and the board issued a special use permit to Dyn Cannell for the PCD. On July 5, 2006, WCCCG was incorporated as an Illinois not-for-profit corporation. Its members include 68 persons, 14 of whom own property adjacent to the subject property. Ten of the persons who spoke at the hearing before the zoning board are members.

On July 12, 2006, WCCCG filed suit in the circuit court of Winnebago County. It filed an amended complaint on November 13, 2006. Count I of the amended complaint sought review under the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2006)) of the County's decision to grant the special use permit. Count II (the LaSalle claim) alleged that the County's grant of the special use permit violated substantive due process, as set forth in LaSalle National Bank of Chicago

v. County of Cook, 12 Ill. 2d 40 (1957). Counts III and IV sought a declaratory judgment that section 90--57 of the Winnebago County Code (Winnebago County Code §90--57 (eff. July 27, 2000)), which permits PCDs and sets out requirements for their approval, was unconstitutional in various ways.

The defendants Winnebago County and Dyn Cannell moved to dismiss the amended complaint pursuant to sections 2--619 and 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619, 2--615 (West 2006)). Their section 2--619 argument was that, under the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/101.01 et seq. (West 2006)), WCCCG lacked standing to bring the suit, because the Act provides that a not-for-profit corporation such as WCCCG may sue in its own name only if "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 805 ILCS 105/103.10(b) (West 2006). The defendants argued that proving the elements of a LaSalle claim would require the participation of individual members who owned property adjacent to the subject property about matters such as a threatened decrease in their property values. The defendants also argued that counts II through IV of the amended complaint should be dismissed pursuant to section 2--615 because they were too vague to make out a claim. Finally, Dyn Cannell argued that count III should be dismissed because the challenged ordinance was not unconstitutionally vague.

The trial court denied the motion to dismiss as to counts III and IV, but granted the motion as to counts I and II. In a memorandum of decision issued on March 7, 2007, the trial court stated that, under the doctrine of associational standing adopted in International Union of Operating Engineers, Local 148 v. Department of Employment Security, 215 Ill. 2d 37 (2005), WCCCG did not have standing to bring suit on behalf of its members, because a majority of the members did not

have standing to sue individually. The trial court further found that the LaSalle claim in count II must be dismissed because an analysis of this claim would not involve pure questions of law and thus would require the participation of individual members in the suit. As to count I, the trial court stated that it was following the special concurrence of Justices Thomas and Garman in International Union, and it therefore found that WCCCG did not have standing to bring suit under the Administrative Review Law, because it had not been a party to the administrative proceedings being challenged. On March 12, 2007, the trial court entered an order dismissing counts I and II, denying the motion to dismiss as to counts III and IV, and finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal.

ANALYSIS

WCCCG appealed, arguing that: (1) the possibility that some of its members may ultimately participate in the trial of the LaSalle claim does not bar associational standing for count II; and (2) it has associational standing to bring an action under the Administrative Review Law despite the fact that it was not formed until after the administrative proceedings, because some of its members participated in those proceedings and could sue in their own right. WCCCG also argues that the trial court erred in holding that the limited number of its members who had individual standing prevented it from having associational standing.

Lack of standing is an affirmative matter that may be asserted in a motion pursuant to section 2--619(a)(9) of the Code. 735 ILCS 5/2--619(a)(9) (West 2006); International Union, 215 Ill. 2d at 45. In a motion to dismiss brought under section 2--619, the movant may go beyond the allegations of the complaint and assert affirmative matters that would defeat the plaintiff's claim. 735 ILCS 5/2--619 (West 2004); Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 485 (1994).

"Under Illinois law, a plaintiff need not allege facts establishing standing. [Citations.] Rather, it is the defendant's burden to plead and prove lack of standing. [Citations.] Where standing is challenged by way of a motion to dismiss, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor." International Union, 215 Ill. 2d at 45.

We review de novo the dismissal of a complaint for lack of standing. International Union, 215 Ill. 2d at 45.

### A. Participation of Individual Members in the LaSalle Claim

The trial court dismissed count II, the LaSalle claim, because it believed that WCCCG lacked standing under the judicially recognized doctrine of associational standing, as enunciated in International Union. However, the defendants also raise a separate source of standing, section 103.10(b) of the Act (805 ILCS 105/103.10(b) (West 2006)), and argue that that statute imposes even more stringent limits on the standing of not-for-profit corporations such as WCCCG that seek to bring suit on behalf of their members. We examine each argument in turn.

### 1. The Doctrine of Associational Standing

In International Union, the Illinois Supreme Court discussed the doctrine of associational standing, through which an organization may assert the legal rights of its members in certain circumstances. The court noted that the doctrine was firmly established in federal law and had been the subject of several United States Supreme Court cases, which identified three requirements for associational standing:

"'(a) [the organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c)

neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " International Union, 215 Ill. 2d at 47, quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 394, 97 S. Ct 2434, 2441 (1977).

The court then adopted the doctrine of associational standing and the Hunt test for whether such an organization has such standing. International Union, 215 Ill. 2d at 51.

Here, the trial court dismissed count II (the LaSalle claim) under the third prong of the Hunt test, the need for participation by individual members in the lawsuit. The defendants argued that the third prong of the Hunt test barred associational standing for WCCCG as to the LaSalle claim because some of the factors that a court must consider in deciding such a claim would require evidence regarding the situation of each individual homeowner.

In LaSalle, 12 Ill. 2d at 46-47, the supreme court identified several factors for courts to use in determining the validity of a zoning ordinance. These factors include:

"(1) the existing uses and zoning of nearby property; (2) the extent to which a particular zoning restriction diminishes property values; (3) the extent to which diminishing the plaintiff's property values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purpose; (6) the length of time the subject property has been vacant as zoned in the context of land development in the vicinity; (7) the community's need for the proposed use; and (8) the care with which the community has undertaken to plan its land use development." 1350 Lake

Shore Associates v. Casalino, 352 Ill. App. 3d 1027, 1035 (2004) (summarizing LaSalle factors).

The defendants argue that establishing the first four factors of WCCCG's LaSalle claim will require the participation of the individual members of WCCCG. They argue that these individual members are not all similarly situated: while some members are neighbors whose land is zoned for agricultural uses, some members live farther away, in residential areas of Rockton. Thus, no one member can speak for all. The participation of individual members in the suit would, they argue, run afoul of the third prong of the Hunt test, which states that an organization does not have standing to bring suit on behalf of its members if either the claim asserted or the relief requested requires the participation of individual members of the organization.

WCCCG responds with several arguments. First, it argues that the third prong of the Hunt test bars standing only when the amount of individual participation needed clearly outweighs the other evidence to be presented in the case. It argues that, in this case, very little individual testimony will be needed. It asserts that the LaSalle factors require an analysis of the impact of the proposed PCD on the nearby property in general, not on any one landowner's property, and WCCCG plans to present much of its evidence on these factors through expert testimony rather than testimony by the neighboring property owners. In addition, as the suit seeks prospective relief rather than damages, no individualized proof of damages will be needed.

International Union is a recent case, and thus there are few Illinois cases applying the doctrine of associational standing. Following the methodology of International Union itself, which drew on federal law in deciding to adopt the doctrine of associational standing and delineating the scope of

that doctrine, we look to the relatively well-developed body of federal case law on associational standing in determining how to apply the third prong of the Hunt test.

Unlike the first two prongs of the Hunt test, the third prong is judicially created and based on prudential considerations. United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 558, 134 L. Ed. 2d 758, 770-71, 116 S. Ct. 1529, 1537 (1996). It "is best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." Brown Group, Inc., 517 U.S. at 557, 134 L. Ed. 2d at 770, 116 S. Ct. at 1536. The third prong was first discussed in Warth v. Seldin, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362, 95 S. Ct. 2197, 2212 (1975), where the Supreme Court stated that, "so long as the nature of the claim and the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." (Emphasis added.)

In Hospital Council of Western Pennsylvania v. City of Pittsburgh, 949 F.2d 83 (3d Cir. 1991), the Third Circuit examined the issue of whether the likely participation in the suit by some individual members of the plaintiff association deprived the plaintiff of standing under the third prong of the Hunt test. The court found that Hunt's enunciation of the third prong derived from the passage from Warth quoted above, and thus permitted an association to assert a claim requiring participation by some, but not all, of its members. Hospital Council, 949 F.2d at 89. Turning to the facts of the case before it, the court found that individual members of the plaintiff association were likely to have to provide discovery and that some might have to provide testimony at the trial.

Nevertheless, the court concluded that such participation by individual members did not provide a basis for denying associational standing under Hunt. Hospital Council, 949 F.2d at 90.

The third prong of the Hunt test also was at issue in Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584 (7th Cir. 1993) (RCPA). In that case, as in Hospital Council and the case before us now, the trial court had dismissed the plaintiff association's complaint, finding that the necessity for participation by individual members of the plaintiff precluded standing under Hunt. The Seventh Circuit followed Hospital Council and reversed the trial court, stating:

"We believe that the approach of the Third Circuit is a sound one. We can discern no indication in Warth, Hunt, or [International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Brock, 477 U.S. 274, 91 L. Ed. 2d 228, 106 S. Ct. 2523 (1986),] that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. Such a stringent limitation on representational standing cannot be squared with the Court's assessment in Brock of the efficiencies for both the litigant and the judicial system from the use of representational standing. Rather, the third prong of Hunt is more plausibly read as dealing with situations in which it is necessary to establish 'individualized proof,' [citation] for litigants not before the court in order to support the cause of action." RCPA, 7 F.3d at 601-02.

The court found that the evidence supporting recovery for the plaintiff "might be supplied by the evidentiary submissions of some of the members," but the presence of each individual member as a party would not be required, and thus there was no bar to associational standing. RCPA, 7 F.3d at 603.

The interplay between the requirements for associational standing and the procedural posture of a motion to dismiss was recently discussed in Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc., 280 F.3d 278 (3d Cir. 2002). There, the trial court dismissed the complaint for lack of associational standing, finding that the allegations of the complaint would require significant participation by the individual members of the association. The association argued that the individual members' participation would not be substantial because the suit involved challenges to the methods by which the defendant reached its decisions rather than to the actual decisions. The appellate court reversed the trial court's dismissal of the plaintiff association's complaint, stating:

"If the Pennsylvania Psychiatric Society can establish these claims with limited individual participation, it would satisfy the requirements for associational standing. While we question whether the Society can accomplish this, at this stage of the proceedings on a motion to dismiss for lack of standing, we review the sufficiency of the pleadings and 'must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff.' Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing Warth, [422 U.S. at 501, 45 L. Ed. 2d at 356, 95 S. Ct. at 2206]). For this reason, we believe the Society's suit should not be dismissed before it is given the opportunity to establish the alleged violations without significant individual participation ***." Green Spring Health Services, 280 F.3d at 286.

Similarly, in this case we must view the complaint in the light most favorable to WCCCG and draw all reasonable inferences in WCCCG's favor. International Union, 215 Ill. 2d at 45.

The defendants point to cases in which courts upheld dismissals for lack of standing when the plaintiff organizations could not establish their right to recovery without significant involvement

by the organizations' individual members. However, the analysis of whether significant participation by individual members is required necessarily must be made on a case-by-case basis, as it will differ depending on the facts of each case and the nature of the relief being sought. The defendants have not identified any cases in which the factual particulars and the relief sought were similar to this case. Accordingly, the cited cases do not govern our determination here.

We turn to the specifics of the case before us. In deciding that the third prong of the Hunt test had not been met, the trial court emphasized that the LaSalle factors "focus on the impact on individual homeowners" and do not present a pure question of law, as did the claim that was at issue in International Union. While the trial court is correct that a LaSalle claim presents a factual inquiry, we disagree that associational standing is proper only when the case involves a pure question of law. Instead, the focus under the Hunt test is whether significant participation by the individual members of the plaintiff association will be necessary to establish the plaintiff's right to relief. Certainly, when a case presents only purely legal issues, it is unlikely to require such individualized proof. See Brock, 477 U.S. at 287, 91 L. Ed. 2d at 241, 106 S. Ct. at 2531; International Union, 215 Ill. 2d at 52. The converse is not necessarily true, however; a case involving a factual inquiry may nevertheless be provable without the participation of the individual members of an organization. The heart of a LaSalle claim is an argument that the enactment of a land use ordinance was arbitrary, capricious, and unrelated to the public health, safety, and morals. LaSalle, 12 Ill. 2d at 46. Thus, the focus of the inquiry in such a claim is the reasonableness of the government's decision under the particular circumstances at issue.

WCCCG contends that, in this case, establishing its right to the relief it seeks will not require substantial participation by its members. It correctly points out that the first LaSalle factor requires

proof of only the zoning and uses of the property "nearby" the proposed development, not the zoning and use of each WCCCG member's property. LaSalle, 12 Ill. 2d at 46; 1350 Lakeshore Associates, 352 Ill. App. 3d at 1035. There is no obvious reason why such evidence would have to be submitted by the individual members themselves, rather than by a realtor, local official, or other competent witness. Evidence regarding the second factor, the diminution of property values caused by the proposed development, may require the participation of some of WCCCG's members, although it is certainly possible that an experienced realtor could testify to such diminution as well. The third and fourth factors are the extent to which diminishing the plaintiff's property values promotes the health, safety, morals, or general welfare of the public, and the relative gain to the public as compared to the hardship imposed upon the individual property owner. Again, while establishing these factors may require the involvement of some individual members, the focus is equally on the likely benefit to, and the health and safety of, the general public if the proposed development proceeds. WCCCG asserts that evidence regarding the development's effect on drainage and sanitation is particularly likely to involve expert testimony rather than the testimony of individual members. Finally, as WCCCG points out, the fact that it is seeking prospective relief rather than damages on behalf of its members means that there will be no need for individualized proof of damages. While we agree with the defendants that this factor is not dispositive (see Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004) (an association does not automatically satisfy the third prong of Hunt simply by requesting equitable relief rather than damages); see also RCPA, 7 F.3d at 603 (third prong of Hunt test was met although the association sought damages on behalf of its members, where the damages could be easily calculated by use of a simple formula and would not require the involvement of individual members in the suit, and the association primarily sought

to establish its members' right to receive damages)), it is a relevant factor that may be considered in evaluating the need for individual members' participation (see Warth, 422 U.S. at 515, 45 L. Ed. 2d at 364, 95 S. Ct. at 2213 (an association's standing to sue on behalf of its members "depends in substantial measure on the nature of the relief sought")).

There is nothing inherently implausible about WCCCG's arguments that only limited participation by its members will be necessary in the trial of its LaSalle claim. As noted above, in determining whether count II should be dismissed for lack of standing, we must view the complaint in the light most favorable to WCCCG and draw all reasonable inferences in WCCCG's favor. International Union, 215 Ill. 2d at 45; see also Green Spring Health Services, 280 F.3d at 286. Thus, unless it is clear that it would be impossible for WCCCG to prevail without significant participation by its members, a motion to dismiss based on the third prong of Hunt must be denied. At this point in the proceedings, we cannot say that establishing WCCCG's right to relief on its LaSalle claim will necessarily require significant participation by the individual members of WCCCG.

### 2. Section 103.10(b)

The defendants argue that, even if WCCCG has associational standing under the Hunt test, section 103.10(b) of the Act (805 ILCS 105/103.10(b) (West 2006)) imposes separate and more stringent requirements for standing. That section provides that a not-for-profit corporation has standing to sue when, inter alia, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 805 ILCS 105/103.10(b) (West 2006). The defendants contend that this provision must be read more restrictively than the third prong of Hunt, to bar an association's ability to bring suit on behalf of its members if even one individual member

would be required to participate in the suit. We look to the intent of section 103.10(b) of the Act to determine whether it imposes more stringent requirements than the Hunt test.

"The primary rule of statutory construction is to give effect to the true intent of the legislature." Advincula v. United Blood Services, 176 Ill. 2d 1, 16 (1996). " '[W]here a statute applies to an area formerly covered by the common law, we interpret the statute as adopting the common law unless the General Assembly clearly and specifically expressed an intention to change the common law.' " Nickels v. Burnett, 343 Ill. App. 3d 654, 659 (2003), quoting Morris v. Ameritech Illinois, 337 Ill. App. 3d 40, 49 (2003). Section 103.10(b) was amended in 1997 via the enactment of Public Act 90--203 (Pub. Act 90--203, §5, eff. July 24, 1997). Prior to that time, that section of the Act provided only that a not-for-profit corporation had the power "[t]o sue and be sued, complain and defend, in its corporate name." 805 ILCS 105/103.10(b) (West 1996). Public Act 90--203 inserted into this sentence language almost identical to the Hunt test for associational standing: "and shall have standing to sue when one or more of its members would otherwise have standing to sue in his or her own right, providing the interests it seeks to protect are germane to the corporation's purposes, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Pub. Act 90--203, §5, eff. July 24, 1997. The comments of Senator Dillard, the sponsor of the bill that became Public Act 90--203, confirm that the amendment was designed to extend the associational standing doctrine that had been developed in the federal courts and adopted by other states to Illinois not-for-profit corporations:

"This bill came out of the Judiciary Committee on the Agreed Bill List and provides that an association which is incorporated pursuant to the General Not For Profit Corporation Act shall have standing to sue when one or more of its members would otherwise have standing

to sue in his or her own right provided that the interest it seeks to protect are [sic] germane to the association's corporate purposes. This would bring Illinois in line with most other states and also proceedings in federal court." 90th Ill. Gen. Assem., Senate Proceedings, March 17, 1997, at 139-40 (statements of Sen. Dillard).

Inasmuch as the intent of the legislature in this instance was to codify the common law of associational standing, we find no basis for interpreting the language of section 103.10(b) as imposing a more stringent standard than that imposed by the case law of associational standing. We therefore reject the defendants' argument that the requirements of section 103.10(b) are distinct from the requirements of the Hunt test. In light of our earlier conclusion that count II should not have been dismissed at the pleading stage pursuant to the doctrine of associational standing, we reverse the trial court's dismissal of count II. If later developments make it clear that significant individual participation will be required to establish WCCCG's right to the relief it seeks, the trial court is free to revisit this issue.

### B. The Claim for Administrative Review

The defendants next argue that, regardless of whether WCCCG can meet the three-part Hunt test for associational standing, WCCCG cannot bring the claim for administrative review contained in count I, for the simple reason that WCCCG was not a party to the earlier administrative proceedings. They point to section 3--101 of the Administrative Review Law (735 ILCS 5/3--101 (West 2006)), which defines the administrative decisions that may be appealed under that law as: "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (Emphasis added.) The defendants argue that, because WCCCG

was not a party to the proceedings before the zoning board or the county board, and indeed did not even come into existence until after the County had issued its final decision regarding the proposed PCD, WCCCG has no legal right to appeal the decision.

The flaw in the defendants' argument is that it ignores the express holding of International Union as well as the nature of derivative types of standing such as associational standing. This very argument was raised by the defendants in International Union, who argued that the union could not appeal the administrative decisions at issue there (regarding individual union members' eligibility for unemployment benefits) because the union had not been a party to the administrative proceedings and was not "aggrieved" by the administrative decisions. International Union, 215 Ill. 2d at 56-57. The court squarely rejected this argument, explaining that what mattered was whether the individual union members had been parties to the administrative action, not whether the union had been a party:

"As noted above the members of Engineers' Union were proper parties to the administrative proceedings. Further, the members of Engineers' Union were aggrieved by the Director's decision denying their claims for unemployment insurance benefits, and they could appeal the Director's decision. 820 ILCS 405/1100 (West 1994). Consequently, the standing requirement limiting review to a party aggrieved by the agency's decision has been met by the members of Engineers' Union. It follows that Engineers' Union, as an organization meeting the requirements of the doctrine of associational standing, need not meet the standing requirement independently. Rather, Engineers' Union derives its standing from the standing of its members." (Emphasis in original.) International Union, 215 Ill. 2d at 57.

The court found support for this conclusion in federal courts' interpretation of standing under the Administrative Orders Review Act (the Hobbs Act) (28 U.S.C. §2341 et seq. (2000)), a federal statute similar to the Illinois Administrative Review Law in that it confers the right to judicial review of certain rules, regulations, or final decisions of federal administrative agencies. As with the Illinois Administrative Review Law, section 2344 of the Hobbs Act limits the right to bring an action for administrative review to persons who were parties to the administrative proceedings and were aggrieved by the resulting administrative decision. 28 U.S.C. §2344 (2000). In interpreting this requirement, courts have held that an organization that was not a party to the administrative proceedings may nevertheless bring an action under the Hobbs Act, so long as the individual members of that organization were parties to the administrative proceedings and aggrieved by the results, and the organization meets the other requirements for associational standing. See Nuclear Energy Institute, Inc. v. Environmental Protection Agency, 373 F.3d 1251, 1266 (D.C. Cir. 2004); Committee for Effective Cellular Rules v. Federal Communications Comm'n, 53 F.3d 1309, 1315 (D.C. Cir. 1995); National Treasury Employees Union v. United States Merit Systems Protection Board, 743 F.2d 895, 911 (D.C. Cir. 1984).

Rather than following the holding of International Union, the trial court here stated that it found persuasive the special concurrence of Justices Thomas and Garman, who dissented from that portion of the majority opinion holding that an association may file an administrative appeal even where it was not a party to the underlying proceedings. International Union, 215 Ill. 2d at 71-72 (Thomas, J., specially concurring, joined by Garman, J.). We cannot condone the trial court's approach, as the lower courts have no power to ignore the holdings of our supreme court's decisions and to adopt some other approach that they may prefer. See Kelley v. Sheriff's Merit Comm'n of

Kane County, 372 Ill. App. 3d 931, 934 (2007), quoting Agricultural Transportation Ass'n v. Carpentier, 2 Ill. 2d 19, 27 (1953) ("' "Where the Supreme Court has declared the law on any point, it alone can overrule and modify its previous opinion, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases" ' [Citation]"). We are bound to follow the majority opinion in International Union, not the special concurrence, and therefore we conclude that WCCCG had associational standing to bring its members' claims under the Administrative Review Law, regardless of whether WCCCG could bring a separate claim under that statute.

The defendants argue that International Union is distinguishable because in that case the union was permitted to, and did, serve as legal counsel for the individual union members in the administrative proceedings. The supreme court noted this fact in its decision and suggested that it provided extra support for allowing the union to challenge the administrative decisions in court. International Union, 215 Ill. 2d at 58. The defendants argue that, since in this case WCCCG did not itself represent any individual members in the proceedings before the zoning board or the county board, and indeed was not even in existence when those proceedings took place, the holding of International Union does not apply.

In our view, the participation of the union on behalf of the individual union members was not a dispositive factor in International Union. Instead, the supreme court expressly adopted the Hunt three-part test for associational standing (International Union, 215 Ill. 2d at 51) and held that organizations meeting this test may bring claims for administrative review on behalf of their members (International Union, 215 Ill. 2d at 57). The court did not impose any additional requirement that the organization seeking such standing also have represented its members in the

administrative proceedings. Thus, we reject the defendants' argument that International Union is not applicable to this case.

As the Seventh Circuit commented in Rockford League of Women Voters v. United States Nuclear Regulatory Comm'n, 679 F.2d 1218, 1221 (7th Cir. 1982), "the standing of an organization is derivative of its members' standing." Applying this principle to the case before us, we find that WCCCG has standing to bring its claim for administrative review because its members have standing. Several of WCCCG's members participated in the initial hearing before the zoning board. As WCCCG also meets the other requirements for associational standing, it is entitled to step into the shoes of its members in bringing a claim pursuant to the Administrative Review Law. Accordingly, we reverse the trial court's dismissal of count I.

### C. The Number of Members With Individual Standing

We turn to the last issue, whether a majority of an organization's members must have individual standing in order for the organization to have standing to bring suit on behalf of all members. The defendants do not raise any argument on this issue, stating in their brief that the question of whether a majority of WCCCG's members have individual standing is "a non-issue on appeal." Nevertheless, the trial court appeared to base its decision at least in part on this issue. We may affirm the trial court on any basis appearing in the record (Rockford Memorial Hospital v. Havrilesko, 368 Ill. App. 3d 115, 121 (2006)), and thus we review the trial court's holding on this issue to determine whether it supports affirmance.

In deciding that WCCCG did not have associational standing, the trial court rejected WCCCG's argument regarding the first prong of the Hunt test--that this prong is met so long as at least one member of the organization has individual standing--as being "entirely inconsistent" with

the case law of associational standing and against the ratio decidendi of International Union, in which the plaintiff union had actually represented the "vast majority" of the individual union members in their unemployment appeals. However, WCCCG is correct that, under the federal law of associational standing adopted in International Union, there is no requirement that the majority of an organization's members have standing to sue in their own right. In Brown Group, Inc., 517 U.S. at 554, 134 L. Ed. 2d at 768, 116 S. Ct. at 1535, the Supreme Court described the first prong of the Hunt test as requiring only "that at least one of the organization's members would have standing to sue on his own." Our own supreme court cited to Brown Group, Inc. with approval in describing the parameters of the doctrine that it was adopting. International Union, 215 Ill. 2d at 47-48. We therefore reject the trial court's emphasis, in its decision that WCCCG lacked associational standing, on the fact that fewer than half of WCCCG's members have individual standing. The parties do not dispute that at least some of WCCCG's members have individual standing to bring the claims asserted by WCCCG here. Thus, the first prong of the Hunt test does not preclude WCCCG's associational standing.

CONCLUSION

For all of the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

CALLUM, J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur because I wish to emphasize a few points that are contained in the majority disposition. I also have a minor disagreement with a comment made by the majority.

The trial court dismissed sundry counts, based upon the following findings:

"[T]he trial court stated that, under the doctrine of associational standing adopted in International Union of Operating Engineers, Local 148 v. Department of Employment Security, 215 Ill. 2d 37 (2005), WCCCG did not have standing to bring suit on behalf of its members, because a majority of the members did not have standing to sue individually. The trial court further found that the LaSalle claim in count II must be dismissed because an analysis of this claim would not involve pure questions of law and thus would require the participation of individual members in the suit. As to count I, the trial court stated that it was following the special concurrence of Justices Thomas and Garman in International Union, and it therefore found that WCCCG did not have standing to bring suit under the Administrative Review Law, because it had not been a party to the administrative proceedings being challenged." Slip op. at 4-5.

I wish to emphasize the following points: first, a majority or minority of an associational membership that has standing is not the benchmark by which associational standing is determined; second, pure questions of law are not the only questions that entitle an entity to qualify for associational standing; third, the mere existence of issues of fact neither constitutes nor requires the "participation" of individual members in the suit; fourth, and finally, associational standing does not require the entity to have been in existence, let alone present, during the administrative proceedings-- it requires only that a member of the association was a party to the administrative proceedings.

The majority has opined that, "If later developments make it clear that significant individual participation will be required to establish WCCCG's right to the relief it seeks, the trial court is free to revisit this issue." Slip op. at 16. I submit that, as long as the pleadings remain unchanged, there

is no need to revisit the issue, and the trial court is not free to revisit the issue. In <u>Warth v. Seldin</u>, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362, 95 S. Ct. 2197, 2212 (1975), the Supreme Court stated that, "so long as the nature of the claim and the relief sought does not make individual participation of <u>each</u> injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction" (emphasis added). Thus, according to <u>Warth</u>, it is the plaintiff's pleadings that determine the claim, the relief sought, and the level of "participation." We have determined that presently the pleadings do not establish that the "participation" of individual members is necessary to grant the relief sought by the plaintiff. Until such time as the plaintiff's complaint is altered to expand the relief sought, there will not be a point in the proceedings that requires revisitation as the majority has stated. Slip op. at 16.

I submit that the parameters of "participation" are determined by the proofs required. The proofs required are determined by the relief sought. The relief sought is determined by the claim, and the claim is determined by the pleadings. Thus, if there is no amendment to the plaintiff's complaint, there will be no need to revisit the issue of "participation" and no need to revisit standing.