2021 IL App (2d) 190985
No. 2-19-0985
Opinion filed December 20, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DEERPATH CONSOLIDATED NEIGHBORHOOD ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-CH-1420 |
| THE LAKE COUNTY BOARD OF REVIEW and MARTIN P. PAULSON in His Official Capacity as Clerk of the Lake County Board of Review, | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Luis A. Berrones, Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff—the Deerpath Consolidated Neighborhood Association (Association)—filed an action against defendants—the Lake County Board of Review (Board of Review) and its clerk, Martin P. Paulson—seeking to establish that the Association has standing to pursue a property tax appeal on behalf of the individual homeowners. Both parties moved for summary judgment. The trial court granted the Board of Review's and Paulson's motion and denied the Association's motion. The Association appeals. We reverse and remand for entry of summary judgment in the Association's favor on the issue of associational standing. We further direct the trial court to enter

a writ of mandamus commanding Paulson or his successor to vacate the dismissal of the tax appeal and to docket that appeal.

¶ 2                                    I. BACKGROUND

¶ 3      The Association is a homeowners' association governed by the Common Interest Community Association Act (765 ILCS 160/1-1 to 1-90 (West 2018)). On or about July 6, 2017, the Association filed an appeal with the Board of Review, challenging the property tax assessments on individual properties owned by the Association's members. In August 2017, the Board of Review dismissed the appeal because the individual homeowners had not authorized the appeal. In October 2017, the Association filed a four-count complaint in the circuit court of Lake County against the Board of Review and Paulson, seeking (1) a declaratory judgment that, *inter alia*, the Board of Review improperly dismissed the appeal, in violation of the Property Tax Code (35 ILCS 200/1-1 to 32-20 (West 2018)), based on an "unpublished rule" prohibiting tax appeals by homeowners' associations on behalf of their members (count I); (2) a declaratory judgment that the "unpublished rule" deprived the Association of equal protection of the law, because condominium associations were permitted to pursue property tax appeals on behalf of unit owners (see 765 ILCS 605/10(c) (West 2018)) (count II); (3) a permanent injunction against enforcement of the "unpublished rule" (count III); and (4) a writ of mandamus compelling the appeal to be docketed (count IV).

¶ 4      The Board of Review and Paulson filed a motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). They sought dismissal of counts I, III, and IV pursuant to section 2-619(a)(9) (*id.* § 2-619(a)(9)) because the Association lacked standing to appeal the assessments of properties owned by the individual homeowners. In addition, the Board of Review and Paulson sought dismissal of count II under section 2-615 of the

Code (*id.* § 2-615) for failure to state a cause of action. The trial court granted the motion, but we reversed the dismissal. *Deerpath Consolidated Neighborhood Ass'n v. Lake County Board of Review*, 2018 IL App (2d) 180244-U. For counts I, III, and IV, we reasoned that lack of standing was an affirmative defense and the Board of Review and Paulson failed to meet their burden of establishing that defense in their motion to dismiss. *Id.* ¶ 26. We concluded that the dispute over standing hinged on application of the associational-standing doctrine (see generally *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977); *International Union of Operating Engineers, Local 148, AFL-CIO v. Illinois Department of Employment Security*, 215 Ill. 2d 37 (2005)) and that the record did not contain sufficient information to apply that doctrine. *Deerpath*, 2018 IL App (2d) 180244-U, ¶ 21. As we noted, the record at that time did not contain any documents relating to the Association's July 2017 appeal to the Board of Review or any documents setting forth the Association's purposes and powers. *Id.* ¶¶ 21-22. We also rejected the Board of Review's and Paulson's argument that the dismissal of count II was proper because there was "a rational basis for treating homeowner's associations differently from condominium associations for purposes of standing." *Id.* ¶ 27. We noted that this argument begged the question of whether the Association lacked standing. *Id.*

¶ 5 On remand, the parties filed cross-motions for summary judgment. Documents submitted in support of the motions included a "2017 Residential Appeal Form" with an attached 6-page list of 280 separate properties, the 2017 assessments for those properties, and the requested reductions. The 2017 Residential Appeal Form contains checkboxes for the various grounds for the appeal. The Association checked the box indicating that the assessment was greater than one-third of each property's fair cash value. Also submitted with the motions were the "Amended and Restated Declaration of Easements, Restrictions and Covenants, for the Deerpath Master Association, Now

Known as Deerpath Consolidated Homeowner's Association" (Declaration) and the Association's Bylaws (Bylaws). We will discuss the relevant portions of the Declaration and Bylaws below.

¶ 6    The trial court granted summary judgment for the Board of Review and Paulson. This appeal followed.

¶ 7                                  II. ANALYSIS

¶ 8    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "When *** parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law." *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 18. Our review of a trial court's ruling on a summary judgment motion is *de novo*. *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 16.

¶ 9    The sole issue raised on appeal is whether the Board of Review and Paulson met their burden of establishing that the Association lacked standing to bring its July 2017 property tax appeal on behalf of the individual property owners. "The function of the doctrine of standing is to insure that issues are raised only by those parties with a real interest in the outcome of the controversy." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). Lack of standing is an affirmative defense. *Id.* at 22.

¶ 10   In *Hunt*, the Supreme Court of the United States considered whether the plaintiff, a Washington state agency, had standing to bring an action on behalf of apple growers to challenge a North Carolina regulation prohibiting growers from labeling closed containers of apples with grades given as a result of the Washington Department of Agriculture's inspection process. North Carolina officials maintained that the plaintiff could not bring suit based upon injuries sustained

by the growers. The Court disagreed. The Court explained that the following three-part test determines associational standing:[1]

> "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

¶ 11 The *Hunt* Court observed that associational standing depends to a significant extent on the type of relief sought. " 'If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.' " *Id.* at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975 )); see also 33 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8345 (2d ed. 1987) ("Generally speaking, the third [prong] is satisfied where an association seeks just injunctive or declaratory relief because these do not usually depend on the individualized circumstances of members.").

¶ 12 Subsequently, in *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 289-90 (1986), the Court observed that:

> "[A]n association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. 'Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the

---

[1] Although the plaintiff was a state agency rather than an association, the Court concluded that, for purposes of standing, the same considerations applied. *Hunt*, 432 U.S. at 344.

lawsuit that individual plaintiffs lack.' [Citation.] These resources can assist both courts and plaintiffs. As one court observed of an association's role in pending litigation: '[T]he interest and expertise of this plaintiff, when exerted on behalf of its directly affected members, assure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult … questions." ' [Citation.]

In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. 'The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.' [Citations.] The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests."

¶ 13    The General Assembly codified the *Hunt* test in section 103.10(b) of the General Not For Profit Corporation Act of 1986 (805 ILCS 105/103.10(b) (West 2018)), and our supreme court adopted the test in *Operating Engineers*, 215 Ill. 2d 37. In *Operating Engineers*, a labor union brought an action for administrative review of the Department of Employment Security director's decision denying benefits to union members who refused to cross another union's picket line. The director's ruling disqualified members from receiving unemployment benefits because they had a direct interest in the second union's labor dispute. Our supreme court concluded that the union had standing to represent its members under the *Hunt* test. Thus, the first prong was satisfied: union members had standing to seek administrative review of the denial of unemployment benefits. *Operating Engineers*, 215 Ill. 2d at 51.

¶ 14     Discussing the second prong, the court observed that the union "acted as the sole bargaining agent for its members with the purpose of furthering their work-related interests, particularly in income and benefits." *Id.* The court added: "In seeking review of the Director's decision, [the union] sought to protect the interests of its members to income and benefits. Such a goal could not be more germane to the purpose of the union." *Id.* at 51-52.

¶ 15     Applying the third prong of the test, the *Operating Engineers* court observed:

"[T]he resources of the judiciary are scarce and should be preserved where compatible with the effective administration of justice. *** [T]he eligibility of the members of [the union] to unemployment compensation benefits turns on common questions of law. Such questions are appropriately resolved in a lawsuit where [the union] represents the vast majority of the *** union members rather than in a multiplicity of lawsuits filed in different counties of this state." *Id.* at 51.

¶ 16     Arguing that the union in *Operating Engineers* lacked associational standing, the Illinois Department of Employment Security contended that participation of the individual union members was necessary because each employee's entitlement to benefits was a fact-specific inquiry depending on information outside the union's knowledge. The court rejected the argument, reasoning: "The judicial proceedings raise pure questions of law. Awards of benefits are not at issue and would be determined by the administrative agency if the judicial review process results in a determination that the union members are eligible for benefits." *Id.* at 54.

¶ 17     Associational standing is not necessarily limited to cases involving pure questions of law. *Winnebago County Citizens for Controlled Growth v. County of Winnebago*, 383 Ill. App. 3d 735, 744 (2008). Some member participation (such as providing evidence) is compatible with

associational standing. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 603 (7th Cir. 1993).

¶ 18    "[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party *indispensable* to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." (Emphasis added.) *Warth*, 422 U.S. at 511. However, the third prong is not satisfied in " 'situations in which it is necessary to establish "individualized proof," [citation] for litigants not before the court in order to support the cause of action.' " *Citizens for Controlled Growth*, 383 Ill. App. 3d at 743 (quoting *Retired Chicago Police Ass'n*, 7 F.3d at 601-02).

¶ 19    We recently considered the doctrine of associational standing in connection with property tax challenges in *Sunnyside Elgin Apartments, LLC v. Miller*, 2021 IL App (2d) 200614. There, the plaintiffs were condominium associations, townhome associations, and homeowner associations that brought suit on behalf of individual homeowners challenging property taxes based on excess accumulations by a particular taxing jurisdiction. At issue was whether a specific plaintiff, Brookside Condominium Association, had standing to raise an excess-accumulation challenge on behalf of its member unit owners. We held that Brookside had statutory standing. We further determined, however, that Brookside also had associational standing. The first prong of the *Hunt* test was satisfied because the individual homeowners had standing to sue. *Id.* ¶ 31. Citing the statute authorizing condominium associations to lodge tax objections (see 765 ILCS 605/10 (West 2018)), the *Sunnyside* court held that "tax objections are germane to a condominium association's purpose, provided that the association is duly authorized to act on behalf of its members." *Id.* ¶ 32. Finally, the *Sunnyside* court concluded that the third prong of the *Hunt* test was satisfied. The court observed that "[a]ll the evidence needed to establish a right to the refund

[of the alleged excess accumulation]—the levies, taxes assessed, and amount paid per condominium unit—is a matter of public record and easily proven with official documents." *Id.* ¶ 33.

¶ 20    With these principles in mind, we consider whether the Association satisfied the *Hunt* test here. There is no dispute that the members of the Association have standing to appeal their property tax assessments, so we turn our attention to the second prong: whether the property tax appeals are germane to the purpose of the Association. To resolve that issue, we examine the contents of the Declaration and the Bylaws. The Declaration recites that the Association "is the successor owner of and solely responsible for the storm water detention and recreational areas set out in Exhibit A (the 'Property')." Exhibit A lists three parcels, consisting of several lots and outlots. Under the heading "General Purposes," the Declaration provides that the Association "is the owner of the Property located in Lake County, Illinois, and desires to establish a single association thereon for the proper operation and management of the Property." The Declaration further provides that the Association is "responsible for maintenance and operation of the Stormwater Detention Facilities and Improvements and in general and to maintain and promote the desired character of the Property." The Association's powers and duties under the Declaration include "[o]wn[ing], maintain[ing] and otherwise manag[ing] the Common Areas, if any, and all facilities, improvements and landscaping thereon." The Association's Bylaws state:

> "The purposes of this Association are to act on behalf of its members collectively, as their governing body for civil functions and other purposes, with respect to the preservation, care, maintenance, replacement, improvement, enhancement, operation, and administration of both real and personal property and for the promotion of the health, safety and welfare of the Members of the Association, all on a not-for-profit basis."

Although there is no mention of taxation among the matters for which the Association may act on its members' behalf, the broad statement of the Bylaws, in our view, encompasses matters related to property taxes. Property tax appeals are within the ambit of "civil functions" concerning property "administration." Property taxes are also germane to the general welfare of the members of the Association. We note that the germaneness test has been described as " 'undemanding.' " *Id.* ¶ 32 (quoting *Humane Society of the United States v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988)). "An association's litigation interests must be truly unrelated to its organizational objectives before a court will declare that those interests are not germane." *American Insurance Ass'n v. Selby*, 624 F. Supp. 267, 271 (D.D.C. 1985). Therefore, we conclude that property tax appeals are germane to the Association's purposes.

¶ 21    A 1996 federal case held that "an association fails to meet the second prong where there is a serious conflict of interest between the organization and its members." *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 863 (7th Cir. 1996). The Board of Review and Paulson contend that the individual homeowners have inherent conflicts of interest because "it may be in the best interest of individual homeowner's [*sic*] to 'point the finger' at other properties within the [Association], noting, for example, Property A deserves to have higher taxes than Property B because it is a more expensive house or lot." This argument is meritless. The owner of Property A does not benefit if taxes are increased on Property B. Likewise, the owner of Property A suffers no harm if the taxes on Property B decrease.

¶ 22    We turn to the third prong of the *Hunt* test. The relief requested in the property tax appeal would not require the participation of the Association's individual members. The Association can base the appeal on publicly available comparable sales data, thus limiting the need for individual homeowner involvement. Participation of individual homeowners is not indispensable. As noted,

associations can often draw upon "a pre-existing reservoir of expertise and capital" when pursuing litigation on behalf of their members. *Brock*, 477 U.S. at 289. Thus, a multi-parcel appeal by the Association will likely be more efficient and economical than a multitude of separate appeals brought by individual property owners. Therefore, recognizing that the Association has standing to bring tax appeals will promote the interests of judicial economy.

¶ 23    Finally, we note that section 1-30(j) of the Common Interest Community Association Act (765 ILCS 160/1-30(j) (West 2018)) provides that the board of a homeowners' association "shall have standing and capacity to act in a representative capacity in relation to matters involving the common areas *or more than one unit*, on behalf of the members or unit owners as their interests may appear." (Emphasis added.) The Illinois Property Tax Appeals Board has held that a homeowners' association may pursue a property tax appeal involving more than one unit. See *Stonecreek Townhome Ass'n*, Ill. Prop. Tax Appeal Bd. Op. No. 16-36976.001-R-1, http://www.ptab.illinois.gov/web/Decisions/2016/2016-36976.pdf (last visited Dec. 3, 2020) [https://perma.cc/37PX-NKJK].

¶ 24    Thus, we conclude that the Association had standing to file the July 2017 tax appeal on behalf of the individual property owners. Therefore, the trial court erred in entering summary judgment for the Board of Review and Paulson and denying the Association's motion for summary judgment on the issue of associational standing. Accordingly, on remand, the court is directed to (1) enter summary judgment in the Association's favor on the issue of associational standing and (2) enter a writ of mandamus commanding Paulson or his successor to vacate the dismissal of the tax appeal and to docket that appeal. This writ of mandamus in the Association's favor, which the Association requested in count IV of its complaint, moots the issues that the Association raised in counts I through III of the complaint.

¶ 25                                    III. CONCLUSION

¶ 26     For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand the cause for (1) entry of summary judgment in favor of the Association on the issue of associational standing and (2) entry of a writ of mandamus commanding Paulson or his successor to vacate the dismissal of the tax appeal and to docket that appeal.

¶ 27     Reversed and remanded with directions.

**No. 2-19-0985**

| | |
|---|---|
| **Cite as:** | *Deerpath Consolidated Neighborhood Ass'n v. Lake County Board of Review*, 2021 IL App (2d) 190985 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 17-CH-1420; the Hon. Luis A. Berrones, Judge, presiding |
| **Attorneys for Appellant:** | Hal R. Morris, David C. Dunkin, Elizabeth A. Thompson, and Erik J. VanderWeyden, of Saul Ewing Arnstein & Lehr LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael G. Nerheim, State's Attorney, of Waukegan (Gunnar Gunnarsson and Jamie L. Helton, Assistant State's Attorneys, of counsel), for appellees. |